R. Crist VIAL, Angela Glover, Betty Hoffman, and Carman Tucker, Individually and on Behalf of All Others Similarly Situated, Appellants,

v.

GAS SOLUTIONS, LTD., Mission Resources Corporation, d/b/a Bellweather Exploration Company, and Texaco Exploration and Production, Inc., Appellees.

No. 06-04-00101-CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 1, 2005.

Decided Feb. 17, 2006.

Ron W. Boorman, Law Office of Ron Boorman, Longview, for appellants.

Rex A. Nichols, Jr., Nichols & Nichols, PC, Andrew G. Khoury, Andrew G. Khoury, PC, Longview, for Gas Solutions, Ltd.

Eugene M. Nettle, Eric D. Wade, Porter & Hedges, LLP, Houston, for Mission Resources Corporation d/b/a Bellweather Exploration.

Michael E. McElroy, McElroy, Sullivan & Miller, LLP, Austin, for Texaco Exploration and Production, Inc.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

R. Crist Vial, Angela Glover, Betty Hoffman, and Carman Tucker appeal the trial court's granting of the summary judgment motions and pleas to the jurisdiction of Gas Solutions, Ltd., Mission Resources Corporation, d/b/a Bellweather Exploration Company, and Texaco Exploration and Production, Inc. The Appellants claim their predecessor in interest was fraudulently induced to execute an agreement concerning a six-acre tract of land, which we will refer to as the Campbell tract. The entire tract lies beneath an easement acquired in 1872 by the Texas & Pacific Railway Company.[1]

In 1887, T.M. Campbell[2] purchased the land in and around the easement. The Appellants claim ownership in the right-of-way through the conveyance of the Nettleton tract.[3] In a companion case also decided this day, we determined that T.M. Campbell conveyed the right-of-way under the strips and gores doctrine to the Appellants' predecessor in interest.[4]

Since 1931, Gregg Oil and its successors have been extracting oil from the Campbell tract. They have been operating under a lease granted in 1931 by Fannie Campbell.[5] The Appellants argue that Fannie Campbell did not own the Campbell tract in 1931 and that Campbell's lease to Gregg Oil did not validly convey a min-

1. The easement is now owned by Union Pacific Railroad Company.

2. T.M. Campbell was governor of Texas from January 15, 1907 to January 17, 1911.

3. For the sake of convenience, we will refer to the approximately 165–acre tract immediately south of the railroad as the Nettleton tract. In 1904, T.M. Campbell conveyed the Nettleton tract to G.B. Turner. In 1907, G.B. Turner sold the property to A.C. Caldwell, who then sold the property to Edna M. Nettleton in 1917.

4. In the companion case, the Appellants sued Union Pacific Railroad Company, Anadarko Holding Company, Anadarko Land Corporation, the unknown stockholders of Gregg Oil Company, and the unknown stockholders of N.P. Powell, Inc., for their failure to account to the Appellants and their predecessors. See Glover v. Union Pac. R.R. Co., 187 S.W.3d 201, 2006 WL 366925 (Tex.App.-Texarkana 2006); see also Cox v. Campbell, 135 Tex. 428, 143 S.W.2d 361 (1940).

5. On September 29, 1931, Gregg Oil obtained an oil and gas lease from Fannie Campbell, the widow of T.M. Campbell, for the Campbell tract. In October 1931, Gregg Oil drilled an oil well on the Campbell tract. On January 26, 1932, the Railroad claimed that it had adversely possessed the tract in question. Gregg Oil agreed to pay Texas & Pacific Railway fifty percent of the net revenue under the lease.

eral lease. The Appellants argue their predecessors actually owned the Campbell tract and were fraudulently induced by Tidal Oil[6] to execute a 1931 agreement, which designated that Gregg Oil had an oil and gas lease on the Campbell tract. The 1931 agreement was in essence a well-spacing agreement in which Tidal Oil, the Appellants, and the owners of the mineral estates of the neighboring tracts agreed not to drill any additional wells. However, the agreement contained the following recital which forms the basis of this lawsuit: "WHEREAS, the above tract of land adjoins on the south the right of way of the Texas & Pacific Railroad which right of way is under lease for oil and gas purposes to Gregg Oil Company." The Appellants allege that this recital misled their predecessors to believe that the lease to Gregg Oil was valid. According to the Appellants, the recital was fraudulently induced and they relied on the recital to their detriment. The Appellants further allege that Texaco, Mission Resources, Gas Solutions, and their predecessors fraudulently concealed the fraudulent inducement.

The Appellants raise seven issues on appeal: 1) the trial court erred in denying their motions for partial summary judgment based on fraudulent inducement, 2) the trial court erred in finding they lack standing, 3) adverse possession is not relevant to the facts of this case, 4) any statute of limitations was tolled by fraudulent concealment, 5) Texaco is by merger Tidal Oil,[7] 6) the recital is not a deemed statement of the Appellants, and 7) the continuing acts of misrepresentation did not pro-vide constructive notice of the fraud. The Appellants claim the trial court erred in overruling their motion for a partial summary judgment based on fraudulent inducement and fraudulent concealment. In the alternative, the Appellants claim there is a fact issue concerning fraudulent concealment. Texaco and Mission Resources argue that the Appellants' claim is barred by the four-year statute of limitations. We conclude the trial court erred in finding that the Appellants lacked standing. We further conclude that, if Tidal Oil committed fraudulent inducement or fraudulent nondisclosure, there is no evidence of fraudulent concealment tolling the statute of limitations. Thus, the statute of limitations bars suit. We affirm the judgment of the trial court in part and reverse in part.

### Standing

Gas Solutions, Texaco, and Mission Resources all filed pleas to the jurisdiction challenging the Appellants' standing to bring suit. Gas Solutions, Texaco, and Mission Resources argue the Appellants lack standing on two theories. Since the Appellants did not own the property when the cause of action accrued, the Appellants lack standing to sue for damages to real property. Second, because fraud claims are personal to the defrauded party, the Appellants lack standing to sue for fraud. We disagree. Because fraud survives the death of the injured party, the Appellants have standing as heirs of the injured party.[8]

6. On January 13, 1931, Edna Nettleton executed an oil, gas, and mineral lease for the Nettleton tract to J.C. O'Brien. Tidal Oil was a successor in interest to J.C. O'Brien. Texaco, Mission Resources, and Gas Solutions are successors in interest to Tidal Oil.

7. Because Texaco concedes for the purposes of this appeal that it is the successor in inter-est to Tidal Oil, we decline to address this issue.

8. The Appellants also argue they have standing because the 1931 agreement expressly provides it is applicable to successors and assigns, they are in privity of estate, and the 1931 agreement is a covenant running with the land. Because we find that the Appellants

On May 2, 1931, Carol L. Simpson received and recorded in Gregg County, Texas, a mineral deed conveyance from Edna Nettleton consisting of twenty-five percent of the mineral estate in a 165–acre tract.[9] Because T.M. Campbell did not retain any interest in the Campbell tract, Simpson's mineral interest included a twenty-five percent mineral interest in the Campbell tract to the center of the right-of-way. *See Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 2006 WL 366925 (Tex.App.-Texarkana 2006); *see also Cox*, 143 S.W.2d at 365. The Appellants inherited from Simpson their interests in the mineral estate of the Nettleton tract on December 13, 1985.

A plea to the jurisdiction challenges a trial court's subject-matter jurisdiction over the controversy. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). "A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Id.* Whether the trial court had subject-matter jurisdiction is a question of law subject to de novo review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Cook v. Exxon Corp.*, 145 S.W.3d 776, 780 (Tex.App.-Texarkana 2004, no pet.).

Standing is a constitutional prerequisite to maintaining a suit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993). Standing, as a necessary component of a court's subject-matter jurisdiction, cannot be waived and can be raised for the first time on appeal. *Id.* at 443. Standing requires the claimant to demonstrate a particularized injury distinct from that suffered by the general public. *Blue*, 34 S.W.3d at 555–56; *see Rodgers v. RAB Invest., Ltd.*, 816 S.W.2d 543, 546 (Tex. App.-Dallas 1991, no writ). The claimant must have an actual grievance, not one that is merely hypothetical or generalized. *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001). We review the issue of standing de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004).

Only the person whose primary legal right has been breached has standing to seek redress for an injury. *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex.1976); *Cook*, 145 S.W.3d at 780. In other words, a person has standing to sue only when he or she is personally aggrieved by an alleged wrong. *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996). "Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate." *Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 732 (Tex.App.-Texarkana 2003, no pet.); *Brunson v. Woolsey*, 63 S.W.3d 583, 587 (Tex.App.-Fort Worth 2001, no pet.).

Texaco, Mission Resources, and Gas Solutions cite this Court's opinions in *Cook*, 145 S.W.3d at 780, and *Denman*, 123 S.W.3d 728, for the proposition that the Appellants lack standing. In *Denman* and *Cook*, this Court held that the plaintiffs lacked standing when any injury to the property occurred before the plaintiffs purchased the property and their deeds contained no assignment of any cause of action. *Denman*, 123 S.W.3d at 734–35. The cause of action for an injury to property belongs to the person owning

---

have standing to pursue the claim of fraud as heirs to the injured party, we decline to decide if any of the above theories would create standing to sue.

9. This conveyance was subject to an oil, gas, and mineral lease executed by Edna Nettleton to J.C. O'Brien on January 13, 1931.

the property at the time of the injury. *Cook,* 145 S.W.3d at 781; *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex.Civ. App.-Austin 1980, writ ref'd n.r.e.). Without express provision, the cause of action does not pass to a subsequent purchaser of the property. *Cook,* 145 S.W.3d at 781. Without such an express provision, a subsequent purchaser cannot recover for an injury committed before his or her purchase. *Id.* Our decision in *Denman* is distinguishable from the current case. The Appellants in this case are not subsequent purchasers of the property but, rather, the heirs of the deceased party. Further, this case concerns a suit for fraud rather than for damages to real property.

 In the alternative, Texaco and Mission Resources argue that the Appellants lack standing because fraud is personal to the defrauded party and the Appellants were not parties to the 1931 agreement.[10] A fraud claim is personal to the defrauded party. *Nobles,* 533 S.W.2d at 927. However, if the cause of action survived the death of the injured party, the heirs of the defrauded party may have standing to recover for the fraud.

 To determine whether a cause of action survives, we must first determine whether the survivability of the cause is controlled by common-law principles or whether a statute provides for survival. Neither party argues that a statute controls the survivability, and our own research has yielded none. When a cause of action is not covered by a survival statute, the common law will control. *First Nat'l Bank of Kerrville v. Hackworth,* 673 S.W.2d 218, 220 (Tex.App.-San Antonio 1984, no writ).

 Under the common law, whether a cause of action survives depends on the nature or substance of the cause, rather than the form in which the cause is asserted. *Dowlin v. Boyd,* 291 S.W. 1095, 1098 (Tex. Comm'n App.1927, judgm't adopted); *State v. Stone,* 271 S.W.2d 741, 749 (Tex.Civ.App.-Beaumont 1954, no writ). A suit for injury to personal or real property will survive the death of the decedent and pass to the heirs of the decedent. *See Dowlin,* 291 S.W. at 1098; *Hackworth,* 673 S.W.2d at 220; *Pace v. McEwen,* 574 S.W.2d 792, 800 (Tex.Civ.App.-El Paso 1978, writ ref'd n.r.e.). The Texas Supreme Court held:

> The true line of demarcation at common law separating those causes of action which survive, from those which do not, is that in the first the wrong complained of affects primarily and principally property and property rights, and the injuries to the person are merely incidental, while in the latter, the injury complained of is to the person, and the property and rights of property affected are merely incidental. In the former case the cause of action survives, while in the latter it abates.

*Dowlin,* 291 S.W. at 1098 (suggesting that fraud survives the death of the injured party); *see Hackworth,* 673 S.W.2d at 220; *Pace,* 574 S.W.2d at 800. "Suits for wrongful acquisition of property by fraud or deceit likewise survive the death of either party." *Thomes v. Porter,* 761 S.W.2d 592, 594 (Tex.App.-Fort Worth 1988, no pet.) (citing *Pace,* 574 S.W.2d at 800).

Mission Resources and Texaco both argue that the Appellants' claims are barred because the property has since been adversely possessed. Unlike the companion

---

**10.** Gas Solutions only argued on appeal that the Appellants lacked standing to sue for inju-ries to real property.

case, the fact that property has since been adversely possessed has no relevance to whether the Appellants may assert a cause of action for fraud in connection with the 1931 agreement.

Fraud, the cause of action at issue, survives the death of the injured party under the common law. Thus, under the facts of this case, the heirs have standing to bring suit. The trial court erred in granting the pleas to the jurisdiction.

### The Claims Are Barred by the Four–Year Statute of Limitations

Texaco and Mission Resources argue that the Appellants' claims are barred by the statute of limitations. The Appellants respond that any statute of limitations was tolled by Texaco's and Mission Resources' fraudulent concealment of the fraudulent inducement. We disagree. Even if there is evidence of an underlying tort, the statute of limitations bars suit.

Both Texaco and Mission Resources filed motions for summary judgment arguing that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. These motions also argued there was no evidence of at least one of the elements of the Appellants' causes of action. As such, these motions were both traditional and no-evidence summary judgment motions.

To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). Summary judgment for a defendant is proper when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *see Wornick Co. v.*

*Casas*, 856 S.W.2d 732, 733 (Tex.1993). The movant has the burden of showing there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377 (Tex.App.-Texarkana 1989, no writ). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex.2002); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). On appeal, the movant must show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *McNamara*, 71 S.W.3d at 311; *Steel*, 997 S.W.2d at 223.

A no-evidence motion for summary judgment is essentially a pretrial motion for a directed verdict. We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex.2003). We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Woodruff v. Wright*, 51 S.W.3d 727, 734 (Tex.App.-Texarkana 2001, pet. denied); *see Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex.2002).

A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the

evidence conclusively establishes the opposite of the vital fact. *Chapman*, 118 S.W.3d at 751. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Chapman*, 118 S.W.3d at 751; *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

 The four-year statute of limitations applies to fraud. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.004 (Vernon 2002). A cause of action accrues, for the purposes of limitations, when the claimant's injury occurs. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature

of its injury. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

 The Appellants argue that limitations have been tolled due to fraudulent concealment. Fraudulent concealment is an equitable defense to limitations that estops the defendant from relying on the statute of limitations. *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983). Fraudulent concealment tolls the statute of limitations until the plaintiff, using reasonable diligence, discovered or should have discovered the injury. *KPMG Peat Marwick*, 988 S.W.2d at 750. "The elements of fraudulent concealment are: (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception." *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.-Fort Worth 1997, pet. denied); *see HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex.1998). Fraudulent concealment tolls the statute of limitations due to "the defendant's active suppression of the truth or failure to disclose when the defendant is under a duty to disclose." *Bartlett*, 958 S.W.2d at 439.

 The Appellants argue that Texaco, Mission Resources, and their predecessors filed fraudulent well-spacing exceptions, fraudulently concealed their duty to disclose, and failed to correct an error in a letter from Tidal Oil to Gregg Oil.[11]

11. The Appellants complain of some additional acts committed by third parties. The Appellants argue that Union Pacific, Anadarko, Fannie Campbell, and their predecessors labeled the oil wells on the Campbell tract as being leased by Texas & Pacific Railway and filed fraudulent tax returns which claimed ownership of the Campbell tract. These acts, though, indicate a claim of ownership rather than fraudulent concealment. Several courts have held that payment of taxes constitutes a claim of ownership. Further, payment of taxes is an element in one of the adverse possession statutes. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.025(a)(2) (Vernon 2002). The fact that Union Pacific, Anadarko, and their predecessors paid taxes on the property and labeled the wells as Texas & Pacific property is no evidence of fraud. Further, these acts were committed by third parties and cannot

The Appellants contend that a letter dated July 2, 1931, addressed to J.C. Hunter, president of Gregg Oil, from W.W. Fleming, president of Mid–Kansas Oil and Gas Company,[12] represents "ground zero" of the fraud perpetrated by Gregg Oil. The letter concerns the spacing of wells, rather than any agreement to defraud the Appellants' predecessors. The letter provides, in pertinent part, as follows:

> In your letter you advise that you have made a proposed location on a lease executed by the Texas & Pacific Railway Company to your Company covering the railroad right of way immediately north and adjacent to our E.M. Nettleton farm. . . . It is further my understanding that this location will cause you to drill your well 49 feet from our north line.

> Mr. Hasson advises me that he has discussed this matter with Mr. Bateman and you and that if we will agree to this location and not contest the location before the Railroad Commission, you will agree to cooperate with us when we make a location on our tract.

> It would be our intention in agreeing to your location, that when we drill, not to directly offset your well but to move to a location further east and at a selected point further east locate a well to be considered an offset to this proposed location of yours, putting it the same distance south of our north line that your well is north of our north line. . . . In other words, it would be the plan of both your Company and ours to avoid unnecessary drilling and to avoid too close drilling of wells and to stagger locations as drilling is demanded, rather than drill direct offsets close to each other.

toll the statute of limitations for the claim against Texaco or Mission Resources.

This letter and the well-spacing exceptions amount to no evidence of deception or an intent to conceal the allegedly misleading nature of the recital in the 1931 document.

■ The Appellants argue that Union Pacific, Anàdarko, and their predecessors fraudulently concealed the alleged tort when they had a duty to disclose it. The Appellants cite *McClung v. Johnson*, 620 S.W.2d 644, 647 (Tex.Civ.App.-Dallas 1981, writ ref'd n.r.e.). In *McClung*, the Dallas Court of Appeals recognized that, in the context of an attorney-client relationship, the failure to disclose may constitute fraudulent concealment.

> A duty to disclose may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression.

*Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex.App.-Corpus Christi 1997, pet. denied); *see Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 633–36 (Tex.App.-San Antonio 1993, writ denied). We note that "Texas law has never recognized a fiduciary relationship between a lessee and royalty owners." *Neel*, 982 S.W.2d at 888. Even if a fact issue exists concerning whether the allegedly misleading recital created a duty to disclose, the Appellants have still not raised a fact issue concerning fraudulent concealment.

■ Fraudulent concealment requires actual knowledge by the defendant that a wrong has occurred and "a fixed purpose to conceal the facts necessary for the

12. Shortly after the letter, Mid–Kansas sold the Nettleton lease to Tidal Oil.

plaintiff to know that it has a cause of action." *Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890 (Tex.App.-Austin 1997, pet. denied). The Appellants have presented no evidence that Texaco, Mission Resources, or their predecessors intended to conceal the cause of action from the Appellants or for the Appellants to have relied on the recital. The evidence merely indicates that there was some confusion concerning the ownership of the Campbell tract. The Appellants introduced several letters as summary judgment evidence, which indicates that, at one time, Tidal Oil questioned the ownership of the Campbell tract. In addition, the Appellants argue that Tidal Oil should have corrected its misstatement when it became aware of the Texas Supreme Court's decisions in *Cox*, 135 Tex. 428, 143 S.W.2d 361, and *Rio Bravo Oil Co. v. Weed*, 121 Tex. 427, 50 S.W.2d 1080 (1932),[13] which were both decided after the recital was made. However, there is no direct or even circumstantial evidence that Texaco, Mission Resources, or their predecessors in interest knew the recital was false or had a fixed purpose to conceal the cause of action from the Appellants.

 Finally, the Appellants should have discovered the injury long ago. Mineral interest owners have an obligation to exercise due diligence to protect their interests. *Neel*, 982 S.W.2d at 886. The doctrine of fraudulent concealment only tolls the statute of limitations until the plaintiffs, using reasonable diligence, discovered or should have discovered the cause of action. *KPMG Peat Marwick*, 988 S.W.2d at 750.

Since the 1930s, Gregg Oil and its successors have been extracting oil and gas from the Campbell tract. The wells on the property were clearly visible, and there is no evidence that Gregg Oil or its successors conducted their activities in a clandestine manner. This Court has held that there is no fraudulent concealment when the "well sites were in plain view on the property." *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 620 (Tex.App.-Texarkana 2002, pet. denied). Since the 1930s, Union Pacific, Anadarko, Fannie Campbell, and their predecessors have claimed ownership of the Campbell tract in numerous public documents. During the past seventy years, the Appellants would have discovered the allegedly misleading nature of the recital if they had exercised due diligence.

 The Appellants' evidence that Texaco, Mission Resources, and their predecessors fraudulently concealed the underlying tort amounts to nothing more than mere suspicion. While Texaco, Mission Resources, or their predecessors never informed the Appellants that they actually owned the Campbell tract, "[a] record titleholder's ignorance of what [he or she] owns does not affect the running of limitations." *Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 198 (Tex.2003). "[S]ome suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex.1993); *see Pool*, 124 S.W.3d at 198. The Appellants' claims amount to little more than suspicion based on the unavailability of complete records more than seventy years later and the unavailability of

---

**13.** In *Rio Bravo Oil*, the Texas Supreme Court held there was a presumption that a deed conveys land to the center of the right-of-way even when the deed describes the abutting land as extending only to the edge of the right-of-way. 50 S.W.2d at 1084. Eight

years later in *Cox*, the Texas Supreme Court reiterated this holding concerning, at a minimum, identical facts as those alleged in our case, if not the actual tract in dispute. 143 S.W.2d at 365.

witnesses. In this case, more than seventy years have elapsed since the complained-of acts. Many of the corporations involved are no longer in existence, and most of the witnesses are no longer available.

None of these allegations create a fact issue concerning whether the defendants used deception to conceal their actions. The Appellants failed to present more than a scintilla of evidence of fraudulent concealment. Therefore, the statute of limitations was not tolled. Because the alleged fraud occurred more than seventy years ago and the statute of limitations has not been tolled, Texaco and Mission Resources proved as a matter of law that the four-year statute of limitations barred suit.

## Conclusion

Because the Appellants are the heirs to the alleged defrauded party and a cause of action for fraud survives the death of the defrauded party, the Appellants have standing. Therefore, the trial court erred in granting the pleas to the jurisdiction. However, there is no evidence of fraudulent concealment tolling the statute of limitations. Thus, the statute of limitations bars suit.

We affirm the judgment of the trial court in part and reverse in part. We affirm the trial court's granting of the motions for summary judgment of Mission Resources and Texaco. Because Gas Solutions only filed a plea to the jurisdiction and the Appellants had standing to bring this suit, we reverse as to Gas Solutions and remand for further proceedings consistent with this opinion.