In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00136-CV

_____

RICHARD F. BUNCH III AND MICHELLE BUNCH, ET AL, Appellants

V.

THE WOODLANDS LAND DEVELOPMENT COMPANY, LP, Appellee

On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 12-02-01950-CV

MEMORANDUM OPINION

This is an appeal from the trial court's orders granting two summary judgments and denying a motion for new trial. In three issues, appellants Richard F. Bunch III and Michelle Bunch ("the Bunches")[1] contend that the trial court erred by granting summary judgments in favor of appellee The Woodlands Land Development Company, LP ("TWLDC") on the issues of the application of the

---

[1]Although the notice of appeal listed other appellants, it appears that the only remaining appellants are Richard F. Bunch III and Michelle Bunch.

1

statute of repose and the merits of the Bunches' claims, as well as by denying their motion for new trial. We affirm the trial court's judgment.

BACKGROUND

On February 22, 2012, the Bunches filed suit against TWLDC for alleged DTPA violations, breach of warranty, and negligence.[2] The Bunches subsequently added claims for fraud and negligent misrepresentation. The Bunches asserted that TWLDC and its affiliates designed and developed The Woodlands, a planned community.[3] According to the Bunches, among the areas designed and developed by TWLDC was Carlton Woods, the subdivision in which the Bunches purchased a home. The Bunches pleaded that they began experiencing structural problems, which their homebuilder determined were caused by the presence of a fault line. The Bunches asserted that the faults, over time, caused the earth beneath the home to move. The Bunches also alleged that TWLDC knew or should have known about the existence and location of the Big Barn Fault and other similar faults in The Woodlands. According to the Bunches, TWLDC retained engineering and geologic

---

[2]The Bunches also sued other defendants who are not parties to this appeal.

[3]The Bunches' first amended petition was apparently their live petition when the trial court signed summary judgment orders.

2

companies to perform studies in the area, and the studies identified known faults and also concluded that a potential for active surface faulting existed in the area.

The Bunches alleged that TWLDC violated the DTPA by causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of the goods or services; representing that the property had characteristics and uses that it did not have; representing that goods or services were of a particular style or model when they were of another; failing to disclose information which was known about the transaction to induce the Bunches to purchase the property; and by breaching express and implied warranties that the property "was suitable as a residential lot, had been developed as part of a master-planned community, to the highest standards and was developed in a good and workmanlike manner, and the implied warranty of merchantability[.]"

In addition, the Bunches contended that TWLDC breached its implied warranty to develop the property in a good and workmanlike manner because "[d]espite having in its possession geologic reports indicating the existence of faults underneath the planned community and [the] risks of surface faulting, TWLDC nevertheless developed and sold the [p]roperty for use as a residential lot with a fault running under it." Furthermore, the Bunches asserted that TWLDC owed them a duty to exercise reasonable care to insure that the subdivided lots it developed and/or

3

sold "were suitable for construction of a dwelling house of the type it intended be built in the Carlton Woods community." According to the Bunches, TWLDC breached its duty by developing the property "over a fault line the existence of which TWLDC knew or should have known[,]" and the Bunches suffered actual damages as a result of TWLDC's alleged negligence.

TWLDC's MOTION FOR SUMMARY JUDGMENT

TWLDC filed a traditional motion for summary judgment, in which it alleged that the Bunches' claims were barred by the statutes of repose. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.008, 16.009 (West 2002). Section 16.008 of the Texas Civil Practice and Remedies Code provides as follows:

(a) A person must bring suit for damages for a claim listed in Subsection (b) against a registered or licensed architect, engineer, interior designer, or landscape architect in this state, who designs, plans, or inspects the construction of an improvement to real property or equipment attached to real property, not later than 10 years after the substantial completion of the improvement . . . in an action arising out of a defective or unsafe condition of the real property. . . .

(b) This section applies to suit for:
(1) injury, damage, or loss to real or personal property[.]

. . . .

(c) If the claimant presents a written claim for damages, contribution, or indemnity to the architect, engineer, interior designer, or landscape architect within the 10-year limitations period, the period is extended for two years from the day the claim is presented.

4

*Id.* § 16.008(a)-(c). Section 16.009 of the Texas Civil Practice and Remedies Code

provides as follows, in pertinent part:

(a) A claimant must bring suit for damages for a claim listed in Subsection
(b) against a person who constructs or repairs an improvement to real
property not later than 10 years after the substantial completion of the
improvement in an action arising out of a defective or unsafe condition
of the real property or a deficiency in the construction or repair of the
improvement.

(b) This section applies to suit for:
(1) injury, damage, or loss to real or personal property[.]

. . .

(c) If the claimant presents a written claim for damages, contribution, or
indemnity to the person performing or furnishing the construction or
repair work during the 10-year limitations period, the period is extended
for two years from the date the claim is presented.

*Id.* § 16.009(a)-(c).

In its motion, TWLDC argued that its licensed professional architects and

engineers planned and designed the property and constructed improvements in the

Bunches' neighborhood. According to TWLDC, its "decisions and activities

occurred well beyond 10 years ago, with some dating as far back as 33 years ago."

TWLDC asserted that it "began planning, designing, and developing The Woodlands

more than forty years ago, taking undeveloped timberland and planning, designing,

and developing a diverse range of improvements to that property, including

designing numerous residential subdivisions." TWLDC contended that it planned

5

and designed improvements to the Bunches' real property and then constructed them, and that the work was completed more than ten years before the Bunches filed their lawsuit.

TWLDC attached numerous exhibits to its motion for summary judgment. Timothy J. Welbes, Co-President of TWLDC, signed an affidavit which stated that in 1974, TWLDC began designing, planning, and developing The Woodlands to be a master-planned community. Welbes averred that TWLDC designed, planned, and developed numerous residential neighborhoods, including Carlton Woods. Welbes explained that "[a]fter TWLDC completed development of each neighborhood, which included constructing improvements such as streets, utilities, and drainage features, TWLDC sold the improved lots within the neighborhood to builders."

Alex Sutton, Co-President of TWLDC, signed an affidavit stating that, as an in-house licensed engineer for TWLDC, he worked alongside other in-house licensed engineers in TWLDC's engineering department. According to Sutton, TWLDC's engineering department assisted the planning department "by providing information regarding development constraints" to TWLDC's licensed in-house architects, and over a period of decades, TWLDC's engineering department sought proposals and commissioned fault studies for the subdivisions. Sutton averred that once a subdivision had been designed and planned, TWLDC constructed various

6

improvements, "such as streets, water, sanitary sewer and drainage facilities, residential lots and commercial areas, mailbox pads, and underground utilities, including electricity, cable, gas, and telephone." According to Sutton, TWLDC served as its own general contractor and retained subcontractors, including engineers, architects, geotechnical labs, inspectors, clearing contractors, paving contractors, and utility contractors. Sutton averred that TWLDC's subcontractors completed the construction of water, sanitary sewer, and drainage facilities in the Bunches' subdivision on December 20, 2000, and the construction of streets in the subdivision was completed by December 22, 2000. According to Sutton, "TWLDC's construction of improvements to [Carlton Woods] Section 5 was substantially complete by December 22, 2000."

TWLDC also attached to its motion the affidavit of Robert Heineman, TWLDC's Vice President of Planning and a licensed architect. Heineman stated in the affidavit that he met with other licensed architects in TWLDC's planning department who were responsible for designing at the neighborhood level. Heineman averred that "[u]nlike most developers, TWLDC has employed many licensed architects and other professionals to directly undertake, in-house, the land planning function, through its planning department." According to Heineman's affidavit, TWLDC's planning and designing of residential neighborhoods included

7

planning and designing of "numerous improvements, including streets, parks, green spaces, and residential lots, and then preparing the preliminary plats establishing the location and layout of these improvements based on development constraints and environmental factors as well [as] applicable governmental platting requirements." Heineman averred that TWLDC's planning department relied on TWLDC's engineering department to identify development constraints, including potential geologic faults.

In addition, TWLDC attached to its motion for summary judgment the affidavit of Jim Wendt, who was previously employed as a senior planner and licensed architect in TWLDC's planning department. Wendt averred that, using his professional architectural judgment and the information TWLDC's engineering department provided, he personally decided where lots and improvements would be located in the Bunches' subdivision.

The Bunches filed a response to TWLDC's motion for summary judgment in which they argued that the statutes of repose were not intended to apply to developers who do not design or plan improvements to real property or construct or repair improvements on real property. According to the Bunches, because TWLDC did not attach or affix personalty to the property, TWLDC did not construct improvements on the property. The Bunches argued that TWLDC failed to establish

8

that it is in the class of engineers, architects, or contractors who are protected by the repose statutes. The Bunches contended that they have raised "a scintilla of evidence" that TWLDC should not be protected under the repose statutes because of its alleged knowing, purposeful, and willful concealment of "critical fault[-]related information." In addition, the Bunches argued that the statutes of repose do not apply to TWLDC because any improvements made by TWLDC were not linked to the cause of the Bunches' damages. The Bunches further argued that the affirmative defense of fraudulent concealment applies. Lastly, the Bunches maintained that fact issues exist with respect to the date of substantial completion. In their response, the Bunches objected to Sutton's affidavit because he is an interested witness, and the Bunches asserted that Sutton's affidavit, particularly when considered together with his deposition testimony, was not clear, positive, and uncontroverted.

The Bunches attached numerous exhibits to their response. The Bunches' first exhibit was TWLDC's manual for residents, which the Bunches argued demonstrates that TWLDC was merely a developer and did not act as an architect or engineer and did not construct personalty that became affixed to the land. The Bunches pointed out that the manual stated that each home builder is solely responsible for the construction process. In addition, the Bunches pointed out that, in a mandamus proceeding filed with this Court, TWLDC "admitted that when it

sells lots to builders, it sells them as 'unimproved.'" According to the Bunches, "Sutton did not manage construction of anything on the lots themselves, only the paving of the streets and the placement of the utilities, including power, telephone/cable[,] and gas." In addition, the Bunches attached a copy of TWLDC's petition for writ of mandamus.

The Bunches also provided a copy of a document entitled "Covenants, Restrictions[,] Easements, Charges[,] and Liens [o]f The Woodlands," which defines "improvements" as follows:

> any physical change to a structure which alters the physical appearance of the structure, including by way of example, but not limited to, adding or removing square footage area space to or from a structure, painting or repainting a structure, or in any way altering the size, shape[,] or physical appearance of any structure.

In addition, the Bunches provided a copy of a 1984 memorandum regarding "Village III Zone I Economic Model Update[,]" which the Bunches assert "contains numerous references to profits and expenses related to things other than personalty affixed to real property, including water, sewer and drainage facilities, sales of residential lots . . ., as well as sales of commercial retail, church[,] and school lots." According to the Bunches, the memorandum is "notably silent as to personalty that TWLDC engineered, designed, planned[,] or constructed that was affixed to a lot, thereby becoming an improvement." The Bunches also attached excerpts of

deposition testimony from several individuals associated with TWLDC, including Sutton.[4]

In addition, the Bunches attached memoranda regarding faults and fault studies authored by Robert Sekola, who the Bunches state in their response to the motion for summary judgment was an engineer and former employee of TWLDC. The Bunches also attached excerpts from the deposition testimony of Bill R. Elsbury, who testified that he believed two faults were active in The Woodlands area before 2008. TWLDC filed a reply to the Bunches' response to its motion for summary judgment.

After conducting a hearing on TWLDC's motion for summary judgment, the trial court signed an "Order and Final Judgment" on January 21, 2016, in which it granted TWLDC's motion for summary judgment on repose and stated: "As a result of the ruling on the statute of repose, all claims by plaintiffs are dismissed with prejudice[.]" The trial court also included language of finality. In three appellate issues, the Bunches argue that the trial court erred by: (1) granting summary judgment in favor of TWLDC on repose, (2) granting a motion for summary

---

[4]The record reflects that Sutton's affidavit was signed on December 18, 2015. The deposition excerpts provided by the Bunches indicate that Sutton was deposed in August of 2015.

judgment on the merits of the Bunches' claims, and (3) denying their motion for new trial.

ISSUE ONE

In their first issue, the Bunches argue that the trial court erred by granting summary judgment in favor of TWLDC on the issue of the application of the statutes of repose. We review the trial court's summary judgment *de novo*. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). A party moving for traditional summary judgment must establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We review the summary judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

As discussed above, section 16.009 of the Texas Civil Practice and Remedies Code provides that suit against a person who constructs or repairs an improvement to real property must be brought within ten years of the date the improvement to real property was substantially completed. Tex. Civ. Prac. & Rem. Code Ann. § 16.009. Section 16.009 further provides that a claim based on "wil[l]ful misconduct or fraudulent concealment in connection with the performance of the construction or repair[]" is not barred. *Id*. § 16.009(e)(3) (West 2002).

We turn first to the question of whether TWLDC, for purposes of the statute of repose, improved real property. *See id*. § 16.009. As discussed above, the Bunches assert that TWLDC is merely a developer who did not improve the property and, as such is not entitled to the protection of the statute of repose. As the Bunches note in their brief, section 16.009 protects a contractor who actually builds an improvement or who supervises and is contractually responsible for the proper construction of the improvement. *See Reames v. Hawthorne-Seving, Inc.*, 949 S.W.2d 758, 764 (Tex. App.—Dallas 1997, writ denied); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 16.009. To support their argument, the Bunches rely upon *Sonnier v. Chisholm-Ryder Co., Inc.*, 909 S.W.2d 475 (Tex. 1995). In *Sonnier*, the Supreme Court was faced with the issue of whether a manufacturer of a tomato chopper that was installed and then removed twenty years later and reinstalled elsewhere is protected by section

16.009; that is, whether the tomato chopping machine constituted an improvement to real property. *Id.* at 477. In *Sonnier,* the Supreme Court noted that "[a]n improvement includes all additions to the freehold except for trade fixtures which can be removed without injury to the property." *Id.* at 479. We note that, in *Sonnier,* the Court was specifically addressing whether an item of personalty constituted an improvement. *Id.* at 476. In its analysis, the Supreme Court held that "[t]here can be no improvement without annexation to realty, and until personalty is annexed to realty, it by definition cannot be an improvement." *Id.* at 479.

Contrary to the Bunches' argument, *Sonnier* does not stand for the proposition that the only way property may be improved is by attaching personalty to realty. *See id.* The term "improvement" has a broader significance than the term "fixture," and it comprehends "all additions and betterments to the freehold." *Dubin v. Carrier Corp.*, 731 S.W.2d 651, 653 (Tex. App.—Houston [1st Dist.] 1987, writ dism'd by agr.). Black's Law Dictionary defines "improvement" as "[a]n addition to real property, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance." Black's Law Dictionary 773 (8th ed. 2004). The definition provided by the *Dubin* court comports with that found in Black's Law Dictionary. *See Dubin*, 731 S.W.2d at 653; Black's Law Dictionary 773. In addition, case law provides that the repose statute protects general contractors upon a proper

14

showing. *See Jenkins v. Occidental Chem. Corp.*, 415 S.W.3d 14, 25-26 (Tex. App.—Houston [1st Dist.] 2013), *overruled on other grounds*, 478 S.W.3d 640 (Tex. 2016) (holding that the statute of repose applies to an entity acting as a general contractor or that is ultimately responsible for the construction); *Reames*, 949 S.W.2d at 763 (holding that although Hawthorne-Seving did not physically construct an improvement itself, it was sufficiently involved to be considered a contractor because it was acting as a general contractor and bore ultimate responsibility for proper installation).

The key issue is whether TWLDC's activities in developing the land constituted an "improvement." As the Bunches point out, because Sutton is TWLDC's Co-President, he is an interested witness. Accordingly, before considering Sutton's affidavit, we will address this argument.

Rule 166a(c) of the Texas Rules of Civil Procedure provides in pertinent part: "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ. P. 166a(c). As discussed above, the Bunches assert that Sutton's affidavit is not clear, positive, direct, and free from contradictions and inconsistencies when considered together with his deposition testimony.

In the deposition excerpts the Bunches provided from Sutton's testimony with their response to TWLDC's motion for summary judgment, when asked whether subdivisions were substantially complete when paving and utilities were installed, Sutton testified as follows: "I would put a finer cut on that. And that is to say that when the paving and utilities, including power and gas, are -- installed -- . . . which are . . . not managed by us." The following exchange then occurred between counsel and Sutton:

> Q. But in terms of when they're substantially complete with respect to when The Woodlands' contract is finished, it's paving and . . . utilities, such as sewer and water, correct?
> A. Well . . . define for me "substantially complete."
> Q. All right. When Woodlands has nothing left to do and is ready to sell the property to the homebuilders.
> A. And . . . what I'm saying is that we're not ready to sell the property to the homebuilders until the electricity and telephone and gas are installed on a usual basis. Now, that can sometimes be sold earlier if . . . a builder wanted to get the building sooner and wanted to, say, build in model homes or something like that. But . . . the ordinary course of business is that the lots are turned over at that point.
> And there's one more thing done, too; and that is, that the stabilization of the soil is put in place.

When asked what records TWLDC has as to when electrical and dry utilities were installed in a particular subdivision, Sutton testified that such records are difficult to obtain because utilities usually call rather than send a letter confirming that installation is complete. When asked whether he had an "independent recollection" of when Carlton Woods, Section 5, was substantially complete, Sutton

16

testified, "I do not[,]" but he explained that "[t]here would be records of when we paid our contractors." After being asked during the deposition to review various documents and then being asked whether the contract for Section 5 would have been completed in November or December of 2000, Sutton testified, "Probably so." In his affidavit, Sutton averred that his affidavit was "true and correct" and based on his "personal knowledge and information contained in TWLDC's business records."

We see no conflict or inconsistency between Sutton's deposition testimony, when he testified that pertinent records existed but he did not have personal knowledge of the date of substantial completion of Carlton Woods Section 5 at that time, and his affidavit, which he signed after having the opportunity to review TWLDC's records. We therefore conclude that the trial court did not err by considering Sutton's affidavit, which was clear, positive, direct, credible, free from contradictions and inconsistencies, and could have been readily controverted. *See* Tex. R. Civ. P. 166a(c).

With respect to Carlton Woods, Section 5, Sutton averred as follows:

Once a subdivision was designed and planned, TWLDC undertook to construct the various improvements -- such as streets, water, sanitary sewer[,] and drainage facilities, residential lots and commercial areas, mailbox pads, and underground utilities, including electricity, cable, gas, and telephone. TWLDC served as its own general contractor, retaining subcontractors such as engineers, architects, geotechnical labs, inspectors, clearing contractors, paving contractors, and utility contractors to design, construct, and inspect the infrastructure for the

17

creation of developed property. As general contractor, TWLDC managed and oversaw the construction of these improvements through subcontractors and coordinated all the work. Specifically, TWLDC determined and directed the type, scope, and timetable of the construction; hired and selected the subcontractors to perform the construction; monitored the construction to ensure it was done properly and in accordance with the planning and design schematic; financed the construction; coordinated all the work, and communicated and coordinated efforts with, and secured approvals from, applicable government agencies. TWLDC bore ultimate responsibility for the construction of these improvements.

. . .

TWLDC, as developer, contracted E.B. Peavy Construction Co., Inc. to undertake clearing operations in [Carlton Woods] Section 5. The clearing operations were completed by October 17, 2000. TWLDC also undertook the construction of water, sanitary sewer and drainage facilities in [Carlton Woods] Section 5 when it contracted with E&C Group, Inc. to construct these improvements. The construction of water, sanitary sewer[,] and drainage facilities in [Carlton Woods] Section 5 was completed by December 20, 2000. TWLDC also undertook construction of streets when it contracted with R. Hassell and Company, Inc. to construct streets in [Carlton Woods] Section 5. The road construction was completed by December 22, 2000. Thus, TWLDC's construction of improvements to CW Section 5 was substantially complete by December 22, 2000.

Stated simply, Sutton averred that TWLDC designed the subdivision, and engaged subcontractors for its construction. Sutton further averred that construction of improvements to the Bunches' subdivision was substantially complete by December 22, 2000.

We conclude that the trial court did not err by finding that construction work for which TWLDC was responsible as general contractor resulted in an improvement to the property, thereby bringing TWLDC within the protection of section 16.009, nor did the trial court err by impliedly concluding that the improvements to the Bunches' subdivision were substantially complete by December 22, 2000. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.009; *Dubin*, 731 S.W.2d at 653; *see also* Black's Law Dictionary 773. In addition, the Bunches do not fall within the extended notice period provided by section 16.009, which states that if a claimant presents a written claim for damages during the ten-year limitations period, the period is extended for two years from the date the claim is presented. Tex. Civ. Prac. & Rem. Code Ann. § 16.009(c). In their briefing, the Bunches assert that they provided notice of the alleged defects on June 11, 2011, when they sent a written demand for damages to TWLDC. As discussed above, Sutton's affidavit stated that TWLDC's improvements to the Bunches' subdivision were completed on December 22, 2000. Because the Bunches did not provide written notice prior to the expiration of the ten-year limitations period, the running of section 16.009 was not tolled. *See id.*

Lastly, we turn to the Bunches' contention that the statute of repose does not bar their claim because they pleaded and proved fraudulent concealment. As support for their theory of fraudulent concealment, the Bunches apparently rely upon the

19

allegations in their pleadings, as well as TWLDC's statements in a Homebuyer Information disclosure document. The Bunches stated that the Homebuyer Information document represented that environmental and land use issues that might affect their decision about whether to buy a home "include – but are not limited to – the location of wastewater treatment plants, water treatment and storage facilities, recreational facilities, drill[]sites/production facilities sites, schools, churches[,] and retail establishments/sites for retail establishments." The Bunches argue that this constitutes fraudulent concealment because when TWLDC made this "partial disclosure" it "had in its possession a report about the possibility of surface faulting in the area encompassing the Bunches' property."

Pleadings do not constitute summary judgment evidence. *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660-61 (Tex. 1995). "When the elements of the defense of limitations are established prima facie by a movant for summary judgment, the burden falls on the respondent to come forward with proof supporting its allegations of fraudulent concealment." *Suburban Homes v. Austin-Northwest Dev. Co.*, 734 S.W.2d 89, 91 (Tex. App.—Houston [1st Dist.] 1987, no writ). The elements of fraudulent concealment are the existence of the underlying tort, the defendant's knowledge of the tort, the defendant's use of deception to

20

conceal the tort, and the plaintiff's reasonable reliance on the deception. *Vial v. Gas Sols., Ltd.*, 187 S.W.3d 220, 229 (Tex. App.—Texarkana 2006, no pet.).

Sutton averred in his affidavit that "TWLDC was not aware of any purported active geologic fault allegedly lying underneath" the Bunches' property "at the time of their development and sale, or now." In addition, Sutton averred that "TWLDC never did anything to conceal or cover up any wrongdoing in connection with any of these improvements or with any purported active geologic fault allegedly lying underneath" the Bunches' property. The Bunches did not produce a controverting affidavit, nor did they produce any other summary judgment evidence that TWLDC fraudulently concealed the alleged existence of geologic faults from the Bunches. Heineman and Wendt also averred in their affidavits that they were not aware of any purported active geologic fault allegedly lying beneath the Bunches' property at the time of their development and sale, or now. We conclude that TWLDC established that it was entitled to judgment as a matter of law and that no genuine issues of material fact existed as to the application of the statute of repose. *See* Tex. R. Civ. P. 166a(c); *Johnson*, 891 S.W.2d at 644. The Bunches provided no summary judgment evidence contradicting the affidavits of Sutton, Heineman, and Wendt, nor did they produce documentary evidence creating a genuine issue of material fact as

to the date of substantial completion or the elements of fraudulent concealment. *See Vial*, 187 S.W.3d at 229.

For all of these reasons, the trial court did not err by granting summary judgment in favor of TWLDC on the issue of the statute of repose. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.009. We overrule issue one. Because we have determined that the trial court properly granted summary judgment on the issue of repose, we need not consider issue two, in which the Bunches challenge the trial court's granting of summary judgment on the merits of their claims.

## ISSUE THREE

In their third issue, the Bunches assert that the trial court erred by denying their motion for new trial. The Bunches state in their brief that their motion for new trial was based upon the existence of newly-discovered evidence, which showed that "TWLDC did not complete construction of nearby improvements in Section 5 of Carlton Woods until much later than it claimed and did not complete The Club at Carlton Woods until March 2003[.]"

To obtain a new trial based upon newly-discovered evidence, a party must show that (1) the evidence came to his knowledge after trial, (2) his failure to discover the evidence sooner was not due to a lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is "so material [that] it would probably produce

a different result if a new trial were granted." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). We review a trial court's denial of a motion for new trial for abuse of discretion. *Id.*

In their appellate brief, the Bunches argue that, at the hearing on TWLDC's motion for summary judgment on repose, "TWLDC argued for the first time that [the] improvements it made near, but not on, the Bunches' property (i.e. streets and mailbox pads) would entitle TWLDC to protection under § 16.009."[5] The Bunches also argue that the trial court erred by sustaining TWLDC's objections to some of the exhibits to their motion for new trial. The Bunches state in their brief that four of the exhibits were produced by TWLDC in response to the Bunches' requests for production. We conclude that the Bunches did not establish that the evidence did not come to their knowledge until after trial or that the evidence would probably produce a different result if a new trial were granted. *See id.* Accordingly, we conclude that the trial court did not err by denying the Bunches' motion for new trial. *See id.* We overrule issue three and affirm the trial court's judgment.

AFFIRMED.

---

[5]We note that, in its motion for summary judgment, TWLDC argued that it developed the property by constructing, among other things, streets and mailbox pads.

_____

STEVE McKEITHEN
Chief Justice

Submitted on April 13, 2017
Opinion Delivered July 20, 2017

Before McKeithen, C.J., Horton and Johnson, JJ.