**Gladys URIARTE, Appellant,**

v.

**Paul J. PETRO, Appellee.**

**No. 17675.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Aug. 21, 1980.

Rehearing Denied Oct. 7, 1980.

Norwood J. Ruiz, Adrian L. Young, Galveston, for appellant.

Paul R. Stansell, Galveston, for appellee.

Before COLEMAN, C. J., and DOYLE and WALLACE, JJ.

DOYLE, Justice.

This is an appeal from a judgment awarding Paul J. Petro (appellee) certain bank monies, as well as cash and a promissory note received by Gladys Uriarte (appellant), upon the sale of certain real property.

We affirm the judgment.

Appellant and appellee are sister in law and brother–in–law. Trial Testimony showed that sometime between 1954 and 1957 appellant's sister, Norma Smart Petro, now deceased, and Paul J. Petro entered into a common–law marriage. Thereafter, they purchased two pieces of real property as husband and wife. The couple then sold one piece of property, but retained the second piece of property located at 2405 Postoffice Street, Galveston, Texas. In 1964, Norma Petro and Paul Petro were ceremonially married in Arkansas.

During September and October of 1976, Norma Petro was seriously ill, having suffered a series of strokes. At this time appellant took her to the bank, where Norma Petro withdrew $15,000 from a joint savings account belonging to her and her husband, Paul Petro. Norma Petro turned this money over to appellant, who was to use the money only to "take care of them;" "to take care of my sister, because she knew that I would." Norma Petro further executed a deed conveying the Postoffice Street property to appellant. This property was also to be used only to care for Norma Petro.

On October 31, 1976, Norma Petro died in Lake County, Indiana. In October 1977, Paul Petro instituted this suit, seeking to compel appellant to return to him $5,592.99, the balance of the money withdrawn from the joint savings account after giving credit for amounts legitimately expended by appellant for Norma's medical expenses, and further seeking the return of the Postoffice Street property. After filing this suit, but prior to the trial, appellant sold the real property and by agreement of counsel for the parties, all proceeds from the sale were put in escrow pending the outcome of the litigation.

Trial was to a jury who found that Paul and Norma Petro had entered into a common law marriage prior to the acquisition of the Postoffice Street property; that Norma Petro did not make a gift of either the money in the savings account or the Postoffice Street property to her sister, Gladys Uriarte; and that Gladys Uriarte did not exert undue influence or use false misrepresentations to obtain either the money or real property from her sister, Norma Petro. Aside from the jury findings, the court of its own volition made numerous findings based upon the undisputed evidence and set out such findings in its judgment. Included in these findings were the following: that the real property was community property; that the bank account was a joint tenancy with right of survivorship owned by Paul and Norma Petro; that no consideration was given to or received by Paul or Norma Petro for the transfer of this savings account; that the balance of said account is $5,592.00 and is currently held by Gladys Uriarte; that although consideration is recited in the deed conveying the real property, no consideration was ever given or received for this conveyance; and that no children were ever born to or adopted by

Norma Petro. The court further noted that "there are no pleadings in this cause, and there has been no evidence presented, in regard to any administration of the Estate of Norma Smart Petro pending or necessary in the State of Texas." The trial court concluded that appellant held both the cash and the real estate "as trustee under a resulting trust in favor of Paul J. Petro, upon which Defendant must now account and distribute."

This appeal presents only one point of error, asserting the trial court erred in awarding appellee as a matter of law, recovery of the entire interests in the properties the subject of this suit; more specifically, in determining as a matter of law that appellant held the entire interests in such properties as trustee under a constructive trust in favor of the appellee.

Appellant contends that the issue before this court involves the right of disposition held by a sole manager of community property. She cites several cases correctly interpreting the law that: the sole manager has plenary right and power of disposition of such property, except to the extent that the community partner may suffer a deprivation of his community interest under a constructive fraud resulting from an excessive, arbitrary, or capricious transfer. *Horlock v. Horlock*, 533 S.W.2d 52 (Tex.Civ. App.–Houston [14th Dist.] 1975, err dism'd); *Carnes v. Meador*, 533 S.W.2d 365 (Tex.Civ. App.–Dallas 1975, writ ref'd n.r.e.); *Williams v. Portland State Bank*, 514 S.W.2d 124 (Tex.Civ.App.–Beaumont 1974, err. dism'd); *Murphy v. Metropolitan Life Insurance Company*, 498 S.W.2d 278 (Tex.Civ. App.–Houston [14th Dist.] 1973, writ ref'd n.r.e.); *Givens v. Girard Life Insurance Company Of America*, 480 S.W.2d 421 (Tex. Civ.App.–Dallas 1972, writ ref'd n.r.e.). Therefore, appellant submits that if the deceased transferred more than one–half (½) of all the community assets to appellant, she is willing to remit any excess above and beyond the one–half (½) share to which Norma Petro was entitled. She further prays the court to remand the case so a complete accounting of Norma Petro's estate may be undertaken by the trial court.

This position would be tenable if we were not faced with the findings that the conveyance in question and the transfer of funds to appellant were not gifts from Norma Petro. On the other hand, however, appellant did not tender any consideration for such conveyances to Norma or Paul Petro. (For the first time on appeal, appellant now implies that some type of family relationship was the consideration for these conveyances. Such consideration, however, was not pleaded, or submitted as an issue at the trial court level). Regarding the issue of consideration, a very old Texas Supreme Court case is cited for the contention that "the recited monetary consideration in the deed was not, in fact, given for the conveyance, does not defeat it." *Baker v. Westcott*, 73 Tex. 129, 11 S.W. 157 (1889).

Ordinarily, a mere want of consideration is not ground for the avoidance of an executed deed. In addition to lack of consideration, fraud, or undue influence in obtaining the instrument must also appear. 19 Tex.Jur.2d Deeds § 49 (2d ed. 1960); *Austin Lake Estates Recreation Club, Inc., v. Gilliam*, 493 S.W.2d 343 (Tex.Civ.App. Austin 1973, writ ref'd n.r.e.); *McKee v. Douglas*, 362 S.W.2d 870 (Tex.Civ.App. Texarkana 1962, writ ref'd n.r.e.). Issues of undue influence and misrepresentation were submitted to the jury, which found such issues in the negative.

Since this deed is presumed to be valid, then the burden of proving by parol evidence that a resulting trust was engrafted thereon is on him who so contends. *Berry v. Rhine*, 205 S.W.2d 632 (Tex.Civ.App. Fort Worth 1947, no writ). The proof of such resulting trust must be clear, certain and conclusive. *Darden v. White*, 195 S.W.2d 1009 (Tex.Civ.App. Eastland 1946, writ ref'd n.r.e.).

A resulting trust is an "intent trust" and the trust property must have been taken in trust for some special purpose, which purpose subsequently fails or is frustrated, so that consequently the law will imply a trust for the equitable owner of the property, rather than the legal title

holder. Bogert, Trusts & Trustees, Implied Trusts § 451 (2d ed. rev. 1978) p. 610; 27 Harvard L.Rev. 437. If at all, a resulting trust must arise from the transaction, itself, and at the very time the deed is taken and legal title vested in the grantee. *Landon v. Brown*, 266 S.W.2d 404 (Tex.Civ.App. Amarillo 1954, writ ref'd n.r.e.); *Burns v. Veritas Oil Co.*, 230 S.W. 440 (Tex.Civ.App. Amarillo 1921, no writ).

On direct examination by appellee's counsel, appellant stated the property in dispute was a gift to her. However, appellee's counsel subsequently impeached this testimony by having appellant read into evidence testimony from her deposition taken closer to the time of the transaction, in which she stated the property was given to her only for the purpose of taking care of the deceased, Norma Petro. Appellant explained that since Norma has passed away, the property was meant to go to her. Throughout her deposition testimony appellant stated the property was not a gift to her, nor did she give any consideration for the property; she was only meant to have the property to care for her sister.

Appellee contends that in accord with this testimony, a resulting trust must arise.

> Where, without receiving any consideration, and with no intention to make a gift, A transfers property to B, a trust results to A, though there is no proof that B agreed to hold the property in trust. 57 Tex.Jur.2d Trusts § 49 (2d ed. 1964) and cases cited therein; *Carter v. Carter*, 391 S.W.2d 546 (Tex.Civ.App. Dallas 1965, no writ).

Further appellant admitted in her testimony that were her sister living today, she would return the property to her because she really owns it. From this testimony there was evidence for the court to find a resulting trust in favor of appellee, Norma Petro's heir under the Texas laws of descent and distribution, Tex. Probate Code § 45, V.A.T.S. (1980). While Norma Petro did execute and deliver a deed to appellant, at the time the transaction was consummated, it was entered into for the one specific purpose of taking care of Norma Petro.

When that purpose was subsequently fulfilled, with trust res remaining, the remainder reverted to Norma Petro's estate and consequently to appellee.

The judgment of the trial court is affirmed.