**Mark J. MUELLER, Appellant**

v.

**James H. DAVIS, Individually, James H. Davis d/b/a J.D. Minerals, and JDMI, LLC, Appellees**

**No. 06-14-00100-CV**

Court of Appeals of Texas, Texarkana.

Submitted: November 18, 2015

Decided: February 4, 2016

Bob Whitehurst, Whitehurst & White-hurst, Tyler, TX, for appellant

Douglas D. McLallen, Anderson, Lehr-man, Barre & Maraist, LLP, Corpus Christi, TX, Marshall C. Wood, Norton & Wood, LLP, Texarkana, TX, for appellee

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

James Davis doing business as both J.D. Minerals and JDMI, LLC (Davis), and Mark J. Mueller each claim title to the same mineral rights in Harrison County, Texas, through separate conveyances from the same grantors—Virginia Mitchell Cope

and James Mills. Mueller filed suit to quiet title to the minerals, asserting that Davis' deeds were invalid as a matter of law. Davis answered and moved for summary judgment on the basis that his deeds were valid and obtained first, leaving Cope and Mills with no mineral interests remaining to convey to Mueller. The trial court entered summary judgment in favor of Davis, and Mueller appealed. We affirm in part and reverse and remand in part.

## I. Factual And Procedural Background

In September 1991, Virginia Rose Mitchell (later known as Virginia Cope) executed a mineral and royalty deed to Davis. Shortly thereafter, James Hammond Mills also executed a mineral and royalty deed to Davis. Neither of Davis' deeds contains a metes and bounds description or a reference to a volume and page of the Harrison County deed records. Rather, each deed states that the grantor is conveying "[a]ll of those certain tracts or parcels of land out of the following surveys in Harrison County, Texas, described as follows ...." Each deed then lists certain parcels identifying a specific number of acres contained within what appear to be oil and gas production units.[1]

Between 1994 and 2011, Mueller acquired various Harrison County mineral and royalty interests from Cope and Mills.

Mueller subsequently filed suit to quiet title to the mineral and royalty interests, asserting that Davis' deeds were void under the Statute of Frauds and that Davis violated Chapter 12 of the Texas Civil Practice & Remedies Code.[2] Mueller also alleged claims for adverse possession, fraud, failure of consideration, and conversion. Davis entered a general denial and asserted the affirmative defenses of statute of limitations, offset, waiver, estoppel, standing, estoppel by deed, and denial of proof of adverse possession.

Davis moved for traditional summary judgment,[3] arguing (1) that the 1991 deeds satisfied the Statute of Frauds and conveyed to him all of the grantors' mineral interests in Harrison County, (2) that Mueller's claim of adverse possession was barred by the applicable statute of limitations, (3) that Mueller's claim under Chapter 12 of the Civil Practice and Remedies Code was baseless because the 1991 deeds granted Davis a valid interest in the property at issue, and (4) that Mueller lacked standing to raise his remaining claims. Although the order failed to specify the grounds for its ruling, the trial court granted summary judgment in favor of Davis.[4]

## II. Standard of Review

A trial court's entry of summary judgment is subject to de novo review by an

---

1. For example, the first parcel in the Cope deed is identified as "704.00 acres out of the G.W. PETTY, ET AL, A–582, ET AL, known as 'THE AMOCO PRODUCING COMPANY—JOHN HARRISON JR. "B." ' " Each of the specific parcels identified in both of Davis' deeds employs the same descriptive format.

2. Chapter 12 governs disputes related to the filing of fraudulent court records or fraudulent liens or claims against real or personal property. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 12.001–.007 (West 2002 & Supp.2015).

3. Davis' second supplemental motion for summary judgment incorporated by reference his previously denied motion for summary judgment and supplemental motion for summary judgment and asked the court to take notice of his prior summary judgment filings. Davis also filed a no-evidence motion for summary judgment, but there is no order in the record granting any part of that motion.

4. Because Davis was granted a nonsuit on his counterclaim against Mueller, the order granting summary judgment was a final, appealable judgment.

appellate court. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). In performing the required review, we deem as true all evidence which is favorable to the nonmovant, indulge every reasonable inference to be drawn from the evidence, and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). "When the trial court does not specify the basis for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment is sought are meritorious." *Merriman v. XTO Energy, Inc.,* 407 S.W.3d 244, 248 (Tex.2013).

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009). Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment

on that claim. *Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 508–09 (Tex.2010).

## III. Analysis of Issues Related to the Descriptions in Davis' Deeds

### A. Introduction

In Mueller's first three points of error, we are asked to construe the Davis deeds and determine whether the identical language contained in each deed is capable of a single, reasonable interpretation. Mueller contends that summary judgment was improper because the Davis deeds are (1) void as a matter of law because the property descriptions are not legally sufficient to satisfy the Statute of Frauds, (2) insufficient as a matter of law to have conveyed all of Cope's and Mills' mineral interests in Harrison County, or (3) ambiguous, in which case a fact issue remains regarding what property the parties intended to convey.[5]

### 1. Law Governing Deed Interpretation

■ "A deed is subject to the same rules of interpretation and construction as a contract." *Cooke v. Morrison,* 404 S.W.3d 100, 111 (Tex.App.—Houston [1st Dist.] 2013, no pet.). "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered."[6] *Colum-*

---

5. Davis does not dispute that the deed descriptions in Mueller's deeds are sufficient to convey title to the mineral interests identified therein. Rather, Davis asserts that when his deeds are read in their entirety, they conveyed to him everything that Cope and Mills owned in Harrison County, Texas, so that Cope and Mills retained nothing to convey to Mueller after 1991. Mueller takes the contrary position, asserting that the descriptions in Davis' deeds are insufficient to have conveyed anything to Davis in 1991 so that Cope and Mills retained title to everything they subsequently conveyed to Mueller. Therefore, resolution of the parties' claims only involves the interpretation of Davis' deeds, not Mueller's.

6. "A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). "On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties intent." *Id.; see also Hausser v. Cuellar,* 345 S.W.3d 462, 467 (Tex.App.—San Antonio 2011, pet. denied). "An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract." *Co-*

*bia Gas Transmission Corp.,* 940 S.W.2d at 589; *see also Hausser,* 345 S.W.3d at 467.

"The construction of an unambiguous contract is a question of law for the court" to decide de novo. *Willis v. Donnelly,* 199 S.W.3d 262, 275 (Tex.2006); *Luckel v. White,* 819 S.W.2d 459, 461 (Tex.1991). In conducting a de novo review, we exercise our own judgment and give no deference to the trial court's decision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998). Our primary duty when construing an unambiguous deed or contract is to ascertain the parties' true intent as expressed within the four corners of the deed or contract. *Luckel,* 819 S.W.2d at 461; *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

We consider the instrument as a whole, attempting to harmonize and give effect to all its provisions.[7] *Luckel,* 819 S.W.2d at 462; *Coker,* 650 S.W.2d at 393. The deed's terms are given their plain, ordinary, and generally accepted meanings unless the deed itself shows them to be used in a technical or different sense. *Heritage Res., Inc. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996).

### 2. Law Governing Property Descriptions

■■■ The adequacy of a property description in any instrument transferring an interest in real property is a question of law within the purview of the Statute of Frauds. *Long Trusts v. Griffin,* 222 S.W.3d 412, 416 (Tex.2006) (per curiam); *Mayor v. Garcia,* 104 S.W.3d 274, 276 (Tex.App.—Texarkana 2003, pet. dism'd w.o.j.) (citing *Morrow v. Shotwell,* 477 S.W.2d 538, 540 (Tex.1972)). "To satisfy the Statute of Frauds, a contract 'must furnish within itself, or by reference to some other existing writing, the means or data by which the [property] to be conveyed may be identified with reasonable certainty.'" *Long Trusts,* 222 S.W.3d at 416 (quoting *Morrow,* 477 S.W.2d at 539); *Templeton v. Dreiss,* 961 S.W.2d 645, 658 (Tex.App.—San Antonio 1998, pet. denied). The instrument's property description need not be mathematically certain, but only "reasonably certain" so as to enable a person familiar with the area to identify the property to be conveyed to the exclusion of other property. *See Gates v. Asher,* 154 Tex. 538, 280 S.W.2d 247, 248–49 (Tex.1955); *Templeton,* 961 S.W.2d at 659. The purpose of a written land description is not merely to identify the property, but also to provide an actual means of identification. *Reiland v. Patrick Thomas Props., Inc.,* 213 S.W.3d 431, 437 (Tex.App.—Houston [1st Dist.] 2006, pet. denied) (citing *Jones v. Kelley,* 614 S.W.2d 95, 99–100 (Tex.1981)); *Fears v. Texas Bank,* 247 S.W.3d 729, 736 (Tex.App.—Texarkana 2008, pet. denied).

■■■ The legal description in the conveyance must not only furnish enough information to locate the general area, as in identifying it by tract, survey and county,

---

*lumbia Gas Transmission Corp.,* 940 S.W.2d at 589; *Hausser,* 345 S.W.3d at 467.

**7.** We determine the parties' intent from the whole document, "not by the presence or absence of a certain provision." *Concord Oil Co. v. Pennzoil Exploration & Prod. Co.,* 966 S.W.2d 451, 457 (Tex.1998). Arbitrary rules of construction should not be applied absent some ambiguity or irreconcilable conflict that cannot be resolved through harmonization. *See Luckel,* 819 S.W.2d at 462; *see also* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds & Leases: An Encyclopedia of Canons of Construction,* 24 TEX. TECH. L.REV. 1, 72 (1993) ("[A]s a general matter, courts take the position that they should initially attempt to harmonize the deed language within the four corners of the instrument. Only upon their inability to harmonize within the four corners, should the courts resort to anti-harmonizing canons.").

it must also contain information regarding the size, shape, and boundaries of the interest conveyed. *See Morrow v. Shotwell,* 477 S.W.2d 538, 539 (Tex.1972); *Matney v. Odom,* 147 Tex. 26, 210 S.W.2d 980, 982 (Tex.1948). If the contract does not sufficiently describe the real property interest to be conveyed, the conveyance is void under the Statute of Frauds. *Pick v. Bartel,* 659 S.W.2d 636, 637 (Tex.1983); *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150, 152 (Tex.1945). However, a deed should not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property the parties intended to convey. *Hahn v. Love,* 394 S.W.3d 14, 25 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

### B. Analysis

### 1. The Specific Property Descriptions in the Davis Deeds Are Insufficient to Identify the Property Conveyed

■ In this case, the grantors of both deeds purported to convey to Davis:

all of [their] interest[s] in and to all oil, gas, and other minerals in, on, and under ... the following lands (the "Lands") ... situated in the County of Harrison, State of Texas, to-wit:

All of those certain tracts or parcels of land out of the following surveys in Harrison County, Texas described as follows:

1) 704.00 acres out of the G.W. PETTY, ET AL, A–582, ET AL, known as the "AMOCO PRODUCING COMPANY—JOHN HARRISON JR 'B'."

. . . .

---

8. The deeds purport to convey all of the grantor's mineral interests "in, on, and under ... the following lands ... situated in" Harrison County, Texas, and then the deeds attempt to specifically describe "certain tracts

Grantor agrees to execute any supplemental instrument requested by grantee for a more complete or accurate description of said land.

The specific descriptions in the deeds are insufficient as a matter of law to identify the property being conveyed. In *Morrow v. Shotwell,* a property description in a contract of sale that identified property by tract, survey, and county was held to be an insufficient description because it did not refer to any other existing writing and because no means or data existed by which a surveyor could determine what courses and for what distances he should run. *Morrow,* 477 S.W.2d at 539–40 (citing *Greer v. Greer,* 144 Tex. 528, 191 S.W.2d 848 (1946) (holding description including acreage, survey, county, patent, volume, and abstract numbers insufficient); *see also Pfeiffer v. Lindsay,* 66 Tex. 123, 1 S.W. 264, 266 (Tex.1886) (holding insufficient a description that included acreage, survey, county, and abstract number). Here, the specific descriptions reference certain tracts or parcels, a number of acres out of a specific survey, a grid or abstract number, and a specific production unit. However, the descriptions fail to reference another writing or otherwise make it possible to determine the size, shape, and boundaries of the specific mineral acreage sought to be conveyed, and are, therefore, insufficient under *Morrow* and its predecessors.[8] *See id.*

### 2. The Parties Dispute Whether the Mother Hubbard Clause and Succeeding Sentence Should Be Interpreted Together

■ Yet, the Davis deeds also contain the following paragraph:

---

and parcels" out of the listed surveys. Contrary to Davis' argument, that language does not clearly convey all of the grantor's mineral interests in the listed surveys or units.

The "Lands" subject to this deed also include all strips, gores, roadways, water bottoms and other lands adjacent to or contiguous with the lands specifically described above and owned or claimed by Grantors. If the description above proves incorrect in any respect or does not include these adjacent or contiguous lands, Grantor shall, without additional consideration, execute, acknowledge, and deliver to Grant[ee], its successors and assigns, such instruments as are useful or necessary to correct the description and evidence such correction in the appropriate public records. Grantor hereby conveys to Grantee all of the mineral, royalty, and overriding royalty interest owned by Grantor in Harrison County, whether or not same is herein above correctly described.

The first two sentences of this paragraph constitute what is defined as a Mother Hubbard Clause. The general purpose of a Mother Hubbard Clause is to "prevent the leaving of small unleased pieces or strips of land ... which may exist without the knowledge of one or both of the parties by reason of incorrect surveying, careless location of fences, or other mistake." *Smith v. Allison*, 157 Tex. 220, 301 S.W.2d 608, 615 (1956). Such "catch-all" provisions are not effective in conveying significant property interests that are not adequately described in the deed or clearly contemplated by the language of the conveyance. *Jones v. Colle*, 727 S.W.2d 262, 263 (Tex.1987).

The parties dispute whether the third sentence should be read together with the Mother Hubbard Clause or independently. Mueller contends that the last sentence should be read as part of the Mother Hubbard Clause to which it is attached and, therefore, cannot convey any significant property interest. Mueller concludes that because the specific descriptions in the Davis deeds are insufficient to identify the property being conveyed and because those deficiencies cannot be saved by the Mother Hubbard Clause, the Davis deeds are insufficient to convey any mineral interests and are void as a matter of law under the Statute of Frauds.

Davis denies that the last sentence is part of the Mother Hubbard Clause, but contends instead, that it is an independent, valid, county-wide general description of the property being conveyed by his deeds. Davis points to well-settled Texas law holding that a deed purporting to convey all property owned by the grantor in a named state or county is a sufficient description to effect a conveyance. *See Harlan v. Vetter*, 732 S.W.2d 390, 394 (Tex. App.—Eastland 1987, writ ref'd n.r.e.) (quoting *Texas Consol. Oils v. Bartels*, 270 S.W.2d 708, 710 (Tex.Civ.App.—Eastland 1954, writ ref'd) (holding that instrument purporting to convey " '[a]ll the oil, gas and mining leases, royalties and overriding royalties located anywhere within the United States, most of which are located within the States of New Mexico, Kansas, Oklahoma, Louisiana and Texas,' " was sufficient to reasonably identify and convey property at issue)). Accordingly, Davis argues that the last sentence should be read independently from the Mother Hubbard Clause and that, when read in that manner, the deeds conveyed to him all of Cope's and Mills' interests in Harrison County.

A similar fact situation was addressed by the Texas Supreme Court in *J. Hiram Moore, Ltd. v. Greer*, 172 S.W.3d 609 (Tex. 2005), where Greer executed a royalty deed that conveyed all mineral royalties:

> that may be produced from the following described lands situated in the County of Wharton, State of Texas, to wit:
>
> All of that tract of land out of the AB 801 SEC 14/W M BARNARD #14

SURVEY, Wharton County, Texas[,] known as the MEDALLION OIL—SIXS FRELS UNIT. Grantor agrees to execute any supplemental instrument requested by Grantee for a more complete or accurate description of said land. Reference is made to this unit(s) for descriptive purposes only and shall not limit this conveyance to any particular depths or wellbores. *In addition to the above described lands, it is the intent of this instrument to convey, and this conveyance does so include, all of grantors [sic] royalty and overriding royalty interest in all oil, gas and other minerals in the above named county or counties, whether actually or properly described herein or not, and all of said lands are covered and included herein as fully, in all respects, as if the same had been actually and properly described herein.*

*Id.* at 612 (emphasis added).

While Greer owned royalty interests in the Sixs Frels Unit, those interests were entirely within the I. & G.N. Railroad Survey, not the Barnard Survey as referenced in the deed. *Id.* However, the highlighted sentence purported to convey all of Greer's interest in Wharton County, which necessarily included both her tracts in the Sixs Frels Unit as well as her two other tracts in the Railroad Survey which were outside the unit, but within Wharton County. *Id.* Subsequently, Moore claimed to own all of Greer's royalty interests in Wharton County, sued Greer for a determination of their rights, and moved for summary judgment based upon the general grant language at the end of the paragraph. *Id.* at 612–13. Like Davis in this case, Moore based his argument on the language purporting to make blanket county-wide conveyances. Just like here, the trial court granted summary judgment in favor of Moore. *Id.* at 613.

The issue in *Moore* was whether the county-wide conveyance language was sufficient to effect a conveyance of a significant property interest that Greer contended she had no intention of conveying by the deed. *Greer v. J. Hiram Moore*, 72 S.W.3d 436, 441 (Tex.App.—Corpus Christi 2002, *reh'g granted, order withdrawn* ). The Court of Appeals, citing *Jones v. Colle*, 727 S.W.2d 262 (Tex.1987), reversed the trial court and remanded the case, holding that the "longstanding rule in Texas" was that a catch-all clause, like the one at issue, could only convey small property interests that were clearly contemplated within the more particularly described terms of the conveyance and were not effective to convey a significant property interest not adequately described in the deed or clearly contemplated by the deed's language. *Moore*, 72 S.W.3d at 441.

The Texas Supreme Court affirmed the court of appeals' decision reversing the summary judgment, but rather than construe the provision as a matter of law, the Texas Supreme Court found the deed to be ambiguous and remanded the case to the trial court for trial. *Moore*, 172 S.W.3d at 614. Specifically, the Supreme Court held, "The deed in effect states that Greer conveys nothing, and that she conveys everything. We cannot construe this deed as a matter of law. Given the deed's ambiguity, the trial court erred in granting summary judgment." *Id.*[9]

Here, the Davis deeds, when viewed in their entirety, are ambiguous. The sen-

---

**9.** *See also Smith v. Allison*, 157 Tex. 220, 301 S.W.2d 608 (1956). In that case, Clark conveyed to Neely, by specific description, an undivided one-half interest in the oil, gas, and other minerals in and under the SE one-fourth and the NW one-fourth of Section 124, Block 25. *Id.* at 610. Following the specific description of the land under which the one-half interest in the minerals was being conveyed, the deed contained a paragraph reserving to Clark the right to execute all future oil

tence in dispute states, "Grantor hereby conveys to Grantee all of the mineral, royalty, and overriding royalty interest owned by Grantor in Harrison County, whether or not same is herein above correctly described." If, as Davis asserts, the parties intended that sentence to operate independent of the Mother Hubbard Clause and constitute a county-wide conveyance of all of Cope's and Mills' mineral and royalty interests in Harrison County, then the deeds conveyed to Davis everything Cope and Mills owned in Harrison County. On the other hand, if, as Mueller asserts, the parties intended the sentence to be a part of and to modify the Mother Hubbard Clause, then it does not cure the insufficient specific grants, and the deeds convey nothing to Davis. As the Supreme Court stated in *Moore*, "[a] jury should therefore hear evidence and determine the parties' intent." *Id.* Accordingly, we sustain this point of error, reverse the trial court's order granting summary judgment and remand this dispute for trial.

### 3. Summary Judgment on Mueller's Adverse Possession and Conversion Claims and Davis' Adverse Possession Claims Was Premature

Due to our ruling that the deeds are ambiguous as to the parties' intent, we need not address those possible grounds for summary judgment that depend upon who is the rightful owner of the mineral property in dispute. The applicability and merits of both Mueller's claim of adverse possession and Davis' limitations defense under Section 16.025 of the Civil Practice and Remedies Code depend upon which party is the rightful owner and which is the adverse possessor, as the rightful owner cannot adversely possess the property he rightfully owns. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.025(a) (West 2002). In his motion for summary judgment, Davis correctly acknowledged that summary judgment on Mueller's claims under Sections 12.001, 12.002, and 12.003, were dependent on which party holds a "valid interest in the real property at issue."[10] *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 12.001–.003.

Likewise, the elements of conversion require a determination of who owned or was entitled to possession of the property at issue, and because that matter is being remanded for a determination by the trier of fact in this case, summary judgment on this issue was premature. *See Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 759 (Tex.App.—Dallas 2008, no pet.) (elements

and gas leases on the conveyed minerals. The next paragraph read as follows:

> The parties however intend this deed to include and the same is hereby made to cover and include not only the above described land, but also any and all other land and interest in land owned or claimed by the Grantor in said survey or surveys in which the above described land is situated or in adjoining the above described land. Should the foregoing particular description for any reason prove incorrect or inadequate to cover the land intended to be conveyed as above specified grantor agrees to execute such instrument or instruments that may be necessary to correct such particular description.

*Id.* at 610. At the time of the conveyance, Clark was the owner of several tracts adjacent to that specifically described. A dispute arose over title to one of those neighboring tracts. The Court of Appeals found that the paragraph rendered the deed ambiguous, and the Texas Supreme Court affirmed that finding. *Id.* at 611.

10. Davis concedes on appeal that "[i]f the Court finds that [Davis] holds valid deeds, [Mueller's] claims under Civ. Prac. & Rem. Code Section 12.001 fail as a matter of law, as [Davis] will hold a valid interest in the real property at issue."

of conversion include identity of rightful owner or possessor); *see also In re Chinn Exploration Co.*, 349 S.W.3d 805, 810 (Tex. App.—Tyler 2011, orig. proceeding) (applying conversion doctrine in suit to recover mineral interests and stating plaintiff must show that defendant assumed control, without authorization, over mineral interests to exclusion of, or inconsistent with, plaintiff's ownership rights). Accordingly, summary judgment regarding Mueller's adverse possession and conversion claims and Davis' limitations defense was also improper. We reverse the summary judgment and remand those claims to the trial court for further proceedings.

## IV. Analysis of Issues Related to Mueller's Standing to Raise Fraud and Failure of Consideration Claims

In his petition, Mueller also sought damages and to have the Davis deeds set aside due to fraud in the inducement and failure of consideration. Mueller alleged that (1) Davis made false representations regarding the property being conveyed in the deeds that induced a third party, James Mills, into executing the Mills deed to Davis and (2) the Mills deed was void and unenforceable because Davis paid "practically no consideration" to Mills.[11] In his motion for summary judgment, Davis argued that Mueller lacked standing to raise claims for fraud in the inducement and failure of consideration. We agree.

"The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato,* 171 S.W.3d 845, 848 (Tex.2005) (quoting 6A Charles Alan Wright, Arthur R. Miller,

and Mary Kay Kane, *Federal Practice & Procedure : Civil* § 1559 (2d ed.1990)). In Texas, the standing doctrine requires that there be a real controversy between the parties that will be actually determined by the judicial declaration sought. *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.,* 925 S.W.2d 659, 662 (Tex.1996). "The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted." *Everett v. TK–Taito, L.L.C.,* 178 S.W.3d 844, 853 (Tex. App.—Fort Worth 2005, no pet.) (citing *M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704, 707–08 (Tex.2001)). Unless a plaintiff's legal right has been breached, the plaintiff has no standing to litigate. *Shipley v. Unifund CCR Partners,* 331 S.W.3d 27, 28 (Tex.App.—Waco 2010, no pet); *Nobles,* 533 S.W.2d at 927.

Because standing is a component of subject-matter jurisdiction, it cannot be waived and can be raised for the first time on appeal. *Nootsie,* 925 S.W.2d at 662; *City of Laredo v. R. Vela Exxon, Inc.,* 966 S.W.2d 673, 679 (Tex.App.—San Antonio 1998, pet. denied). "When a Texas appellate court reviews the standing of a party for the first time on appeal, it must construe the petition in favor of the party, and if necessary, review the entire record to determine if any evidence supports standing." *City of Laredo,* 966 S.W.2d at 679.

A suit to set aside a deed obtained by fraud can only be maintained by the defrauded party. *Vial v. Gas Solutions, Ltd.,* 187 S.W.3d 220, 227 (Tex. App.—Texarkana 2006, no pet.). A party who was not defrauded by the conveyance has not suffered an invasion of a legal

---

11. We note that a deed obtained by fraud is not void, but voidable. *Nobles v. Marcus,* 533 S.W.2d 923, 927 (Tex.1976).

right and therefore does not have standing to bring suit based on that fraud. *See Nobles,* 533 S.W.2d at 926–27; *but see Vial,* 187 S.W.3d at 227–28 (fraud claim may be brought by heirs of deceased party). Moreover, a mere lack of consideration is generally not enough to void a deed. *Watson v. Tipton,* 274 S.W.3d 791, 801 (Tex.App.—Fort Worth 2008, pet. denied); *Uriarte v. Petro,* 606 S.W.2d 22, 24 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). In addition to a lack of consideration, there must also be fraud or undue influence in obtaining the deed. *Uriarte,* 606 S.W.2d at 24.

Here, the pleadings do not allege that Mueller was defrauded or that Mueller did not receive fair consideration. Additionally, the evidence fails to show that Davis defrauded Mueller or failed to pay him consideration. To the contrary, the pleadings and the evidence show that the fraud or failure of consideration, if any, was perpetrated on Mills, who was not a named party to the underlying suit.[12] Mueller brought this suit in his individual capacity, not as an heir or next friend of Mills. Therefore, Mueller lacked standing to attack the deeds at issue for fraud and failure of consideration. *See Vial,* 187 S.W.3d at 227; *Nobles,* 533 S.W.2d at 927; *Berger v. Berger,* 578 S.W.2d 547, 549 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ) (holding grantor who was alive and competent was only person who could bring action to set aside conveyance for fraud, undue influence, or failure of consideration). Accordingly, we affirm the trial court's summary judgment regarding Mueller's claims for fraud and failure of consideration.

---

**12.** Mills' petition to intervene in the suit was denied.

**13.** Davis requested that this Court sanction Mueller under Rule 45 of the Texas Rules of

## V. Conclusion

In summary, we rule as follows in this case:

First, we affirm the trial court's order granting summary judgment as to Mueller's claims for fraud and failure of consideration.

Second, we find that the property descriptions in the Davis deeds are ambiguous. Accordingly, we reverse the trial court's summary judgment as to the superiority of Davis' ownership to the minerals and remand the case for trial to determine what interests, if any, the parties intended to convey in the Davis deeds.

Third, we reverse the summary judgment as to Mueller's claim for adverse possession, his claim for conversion, and his claims under Chapter 12 of the Civil Practice and Remedies Code. Likewise, we reverse the summary judgment as to Davis' affirmative defense of limitations under Section 16.025 of the Civil Practice & Remedies Code. We also remand these claims and this defense for resolution at trial.[13]

Appellate Procedure for filing a frivolous appeal. *See* Tex.R.App. P. 45. By virtue of our rulings herein, we deny Davis' request for sanctions.