

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00095-CV
_____

LEORRIS THOMAS, Appellant

V.

BOBBY MILLER AND THYRA MILLER, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 13-C-313

Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Carter

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# O P I N I O N

This case involves an oral executory contract under which Leorris Thomas agreed to sell and Bobby Miller (Bobby) agreed to purchase two acres of land located at 149 County Road in Cass County, Texas. Under the terms of the contract, Bobby was to begin paying Thomas' mortgage on the property, and when the mortgage lien was paid in full, then Bobby would own the property. At trial, a Cass County jury determined that Thomas breached the contract, and the trial court's final judgment in this matter awarded Bobby and his wife, Thyra Miller (Thyra), $10,000.00 in damages for breach of contract, prejudgment interest, and attorney fees.

On appeal, Thomas argues that the oral contract was unenforceable under the statute of frauds and that the trial court erred in including Thyra as a judgment creditor because she was not a party to any alleged agreement. He further argues that the evidence was legally and factually insufficient to support the jury's findings that there was any agreement between Thomas and the Millers because the oral contract omitted essential terms and lacked a sufficient property description. In response, while the Millers concede that Thrya's name should be omitted as a judgment creditor, they argue that the evidence is legally and factually sufficient to support the jury's verdict on breach of contract because the partial performance exception to the statute of frauds applies. Finally, the Millers argue that the trial court erred in refusing to submit proposed instructions for unjust enrichment and in reducing the jury's award of attorney fees.

We find that the statute of frauds applies, but that the evidence was legally and factually sufficient to support the jury's findings under the partial performance exception. Yet, we find that there was no evidence that Thyra was a party to any agreement. Therefore, we modify the trial

court's judgment to delete Thyra's name as a judgment creditor and affirm the trial court's judgment, as modified. We decline to address the Millers' arguments, which seek to alter the trial court's judgment, because they failed to file a notice of appeal.

## I.      Factual Background

### A.      The Oral Agreement

Bobby is Thomas' brother-in-law. Bobby testified that, during a conversation in 2003, he and Thomas entered into an oral agreement that would allow him to purchase the property. Bobby testified, "The agreement was that if I'd -- he had this property and if I would pay the notes on it, it could be mine when I finished paying the notes on it." Bobby claimed that they shook hands to confirm their agreement. Even though he had not yet made any payment on the mortgage, Bobby believed that he owned the property after he walked away from the conversation.

Although she was not present when Bobby and Thomas entered into their agreement,[1] Thyra stated, "My husband said to me that . . . [Thomas] told him he paid $10,000 for the property and after—if [Bobby] paid the $10,000 off that it would be his, he would transfer it over in his name, so my understand [sic] that we only paid $10,000 for it." Thyra also claimed that Thomas told her that the property would be theirs after they had finished paying the note. Despite Thomas' assurances, Thyra testified that she "was nervous about the agreement." She was concerned that Thomas never provided Bobby with any written memorialization of the agreement and that the bank note had never been transferred into their names. Thyra confirmed that there was no document indicating that Thomas intended to deed the property to them.

---

[1]No one else was present when the oral agreement was made, and Bobby and Thyra were not yet married in 2003.

## B. The Millers' Actions

Thyra stated that she never received any information on the balance due on the note because the note was in Thomas' name. Bobby testified that he did not know how much money was left on the mortgage Thomas owed to TEXAR Federal Credit Union (the Bank) and that he did not know when he would finish paying off Thomas' note. Nevertheless, he made monthly payments to the Bank in the amount of $113.76 on Thomas' behalf and also paid the property taxes.

The property contained two water wells and a house, which Thyra described as "condemned."[2] Nevertheless, Bobby decided to repair the dilapidated home, and he spent approximately $30,000.00 on that endeavor. He also repaired the water wells on the property.[3] Bobby testified that he took these actions based on his oral agreement with Thomas and that the home renovation was completed in 2006. The evidence at trial demonstrated that Thomas, who owned a barbecue restaurant near the property and accepted shipments of materials for Bobby during the renovation, was well aware of the work being done on the property. The Cass County property records, which identified Thomas and his wife, Mozelle, as the owners of the property at all times, established that the property was appraised at $13,490.00 in 2003 and at $35,460.00 in 2009.

---

[2]Bobby testified several times that the oral agreement was only for the purchase of the land and not for any structures on the land. Thyra also testified that they were only buying the land, not the house, but later testified that they had purchased the house.

[3]The Millers introduced evidence establishing that a utility company had their name listed for utility services provided to the property.

4

### C. Thomas' Attempts to Evict the Millers

Bobby testified that he was overseas from 2008 until 2010 and that Thyra took care of making the monthly payments on the home during that time. The record established that Thomas had attempted to evict Bobby and Thyra from the property in 2007. He hired attorney Jeff Mays to send notice to the Millers that Thomas had elected to terminate their verbal lease agreement effective October 1, 2007, and that they should vacate the premises before that date. Mays also wrote the following letter, dated November 21, 2007, to the Miller's attorney:

> When your client came here from California, he moved into the house occupied by Mr. and Mrs. Thomas. Mr. Thomas primarily allowed your client to move into the subject house so he would move out of the house occupied by Mr. and Mrs. Thomas. Mr. Thomas told your client he could move into the house and live there if he would make the payments owed on the mortgage. He agreed to pay off the loan at TEXAR when his house in California sold, but even though he got more than enough money from that house, he did not pay off the loan. As far as your client ever owning the house is concerned, all Mr. Thomas told him is that they would settle up when the loan at TEXAR was paid off. There was absolutely no agreement as to the amount of the "settle up" or how that would take place.[4]

The Millers did not vacate the property and continued paying the mortgage on Thomas' behalf.

On June 4, 2009, Mays sent another letter to the Millers stating that Thomas had elected to terminate their "lease" effective August 1, 2009. The letter warned that the Millers were to vacate the premises by that date or face an action for forcible entry and detainer. After the Millers failed to vacate the premises, Thomas filed a petition for eviction claiming that the Millers had failed to pay rent. After Thyra claimed that the property belonged to Bobby and her, the justice court found that there was a title dispute and dismissed Thomas' petition for want of jurisdiction.

---

[4]The letter also stated that Thomas had already paid $853.44 on the Note.

When he returned to the United States in 2010, Bobby learned that Thyra had moved out of the home in 2009 because she felt threatened. Thyra alleged that she moved because Thomas was harassing her.

Thyra stated that she made the last payment to the Bank in June 2009. She was not sure of the balance on the note, but testified that it may have been $3,100.00. She stated that she had never missed a mortgage payment until she decided to leave the property. Bobby stated that they had paid on the note for six years, but had no idea whether they had actually paid the note off or what the mortgage balance was.

### D.    Procedural History

After Thyra moved out, Thomas deeded the property to Clay Jiles, prompting the Millers to file suit in 2013. The Millers' petition alleged that they had made payments on the note and substantial improvements to the property in reliance on the oral agreement. The Millers asserted causes of action for breach of contract, promissory estoppel, and fraud.[5]  In his answer to the lawsuit, Thomas asserted the statute of frauds.

After it overruled Thomas' motion for directed verdict based on the statute of frauds, the trial court instructed the jury that the following facts had been admitted because Thomas failed to file timely responses to requests for admissions:

> that the defendant owned the property in 2004; that the defendant owed a mortgage loan on the property in 2004; that the plaintiffs moved [onto] the property in 2004; that the plaintiffs occupied the property from 2004 to 2009; that the defendant did not reside [on] the property during 2004 to 2010; that the plaintiffs made payments on a mortgage secured by the property to [the Bank] between 2004 and 2010; that the plaintiffs made repairs and improvements to the structures on the property

---

[5]The Millers abandoned their fraud claims following a motion for directed verdict at trial.

6

between 2004 and 2010; that the defendant did not make any repairs or improvements to the structures on the property between 2004 and 2010; and that the defendant did not have any third parties make improvements to the structures or property between 2004 and 2010.

The trial court's charge submitted breach of contract and promissory estoppel theories. The jury found: (1) that Thomas agreed to deed two acres of land, including the house and two water wells, to the Millers in exchange for them paying off a loan that Thomas owed to the Bank, (2) that the Millers paid consideration pursuant to the parties' agreement, had possession of the property, and made valuable and permanent improvements on the land, with Thomas' consent, (3) that Thomas failed to comply with the agreement, (4) that the Millers were entitled to lost benefit of the bargain damages in the amount of $10,000.00, (5) that the Millers were entitled to $12,000.00 in reasonable and necessary attorney fees, (6) that the Millers substantially relied on Thomas' promise, that the reliance was to their detriment, and that their reliance was forseeable to Thomas, and (7) that the damages resulting from that reliance were $6,000.00 for all improvements and repairs, $710.00 for property tax payments paid by the Millers, and $12,000.00 in attorney fees.

The Millers elected to recover under the breach of contract theory, and the trial court entered final judgment based on the election and the jury's verdict. Thomas' motion for judgment notwithstanding the verdict, also arguing the statute of frauds, was overruled by operation of law.

7

## II. Legal and Factual Sufficiency of the Evidence to Support the Jury's Answers to Question 1 and Question 2

On appeal, Thomas argues that the evidence was legally and factually insufficient to support the jury's answer to Question 1 of the jury charge, in which the jury found that "Thomas and Bobby Miller agree[d] that Leorris Thomas would deed two acres of land including a house and two water wells to Bobby Miller in exchange for Bobby Miller paying off a loan owed by Leorris Thomas to [the Bank]." Thomas also argues that the jury's finding on Question 2 of the jury charge, that Bobby met the partial performance exception, was not supported by legally and factually sufficient evidence.[6]

### A. Standard of Review

In determining legal sufficiency, the appellate court determines "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 582 (Tex. App.—Texarkana 2012, no pet.). In looking at the evidence, we credit favorable evidence if a reasonable jury could and disregard contrary evidence unless a reasonable jury could not. *City of Keller*, 168 S.W.3d at 827. The evidence is legally insufficient if (1) there is a complete absence of evidence of a vital fact; (2) the rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence offered to prove a vital fact; or (4) the opposite of the vital fact is conclusively established by the evidence. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). More than a

---

[6]Thomas does not challenge the jury's finding that he breached the oral agreement.

8

scintilla of evidence exists when the evidence reaches a level enabling reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

When reviewing a jury verdict for factual sufficiency of the evidence, we consider and weigh all the evidence and only set aside the verdict "if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

### B.    The Statute of Frauds Applies

"Whether a contract falls within the statute of frauds is a question of law." *Bookout v. Bookout*, 165 S.W.3d 904, 907 (Tex. App.—Texarkana 2005, no pet.) (citing *Bratcher v. Dozier*, 346 S.W.2d 795, 796 (Tex. 1961)). "A contract which is for the sale of real estate or which is not to be performed within one year after the agreement's formation is not enforceable unless it is (1) in writing and (2) signed by the person to be charged with the promise." *Id.* (citing TEX. BUS. & COM. CODE ANN. § 26.01 (West 2015)). Under Section 5.072 of the Texas Property Code, "An executory contract is not enforceable unless the contract is in writing and signed by the party to be bound or by that party's authorized representative." TEX. PROP. CODE ANN. § 5.072(a) (West 2014). It is uncontroverted that this was an oral contract for the sale of real property and was not to be performed within a year.

Also, "[t]he adequacy of a property description in any instrument transferring an interest in real property is a question of law within the purview of the Statute of Frauds." *Mueller v. Davis*, 485 S.W.3d 622, 627 (Tex. App.—Texarkana 2016, pet. filed) (citing *Long Trusts v. Griffin*, 222

9

S.W.3d 412, 416 (Tex. 2006) (per curiam); *Mayor v. Garcia*, 104 S.W.3d 274, 276 (Tex. App.—Texarkana 2003, pet. dism'd w.o.j.)). "To satisfy the Statute of Frauds, a contract 'must furnish within itself, or by reference to some other existing writing, the means or data by which the [property] to be conveyed may be identified with reasonable certainty.'" *Id.* (quoting *Long Trusts*, 222 S.W.3d at 416). "The instrument's property description need not be mathematically certain, but only 'reasonably certain' so as to enable a person familiar with the area to identify the property to be conveyed to the exclusion of other property." *Id.* (citing *Gates v. Asher*, 280 S.W.2d 247, 248–49 (Tex. 1955)).

Thomas argues that the property description was insufficient for there to be a meeting of the minds and that it did not satisfy the requirements of the statute of frauds. As we explain below, we conclude that the jury properly found a meeting of the minds with respect to the sale of two acres of land. We further find that, even though the property description did not meet the statute of fraud's requirements, the partial performance exception removed the oral contract from the statute of frauds.

"The purpose of a written land description is not merely to identify the property, but also to provide an actual means of identification." *Id.* (citing *Reiland v. Patrick Thomas Props., Inc.*, 213 S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). "The legal description in the conveyance must not only furnish enough information to locate the general area, as in identifying it by tract, survey and county, it must also contain information regarding the size, shape, and boundaries of the interest conveyed." *Id.* at 627–28. "If the contract does not

10

sufficiently describe the real property interest to be conveyed, the conveyance is void under the Statute of Frauds."[7]  *Id.* at 628.

Undoubtedly, the oral contract did not satisfy the statute of frauds because (a) it was not made in writing and (b) it did not contain a sufficient property description.  Nevertheless, the failure to meet the statute of frauds does not end our inquiry.  *See Jenkins v. Sims*, No. 06-07-00038-CV, 2007 WL 2682110, at *4 (Tex. App.—Texarkana Sept. 14, 2007, pet. denied) (mem. op.); *Elizondo v. Gomez*, 957 S.W.2d 862, 864 (Tex. App.—San Antonio 1997, pet. denied).

---

[7]Thomas also argues that the oral contract omitted essential terms of the Millers' payment obligations.  To be an enforceable contract, the parties must have agreed on the essential terms.  *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).  "The parties, however, may agree on some terms sufficient to create a contract, leaving other provisions for later negotiation so long as those terms are not material or essential."  *Thedford Crossing, L.P. v. Tyler Rose Nursery, Inc.*, 306 S.W.3d 860, 868 (Tex. App.—Tyler 2010, pet. denied).  "It is only when an essential term is left open for future negotiation that there is nothing more than an unenforceable agreement to agree."  *Morikawa v. Ishii*, No. 10-05-00180-CV, 2006 WL 2067933, at *1 (Tex. App.—Waco July 26, 2006, no pet.) (mem. op.).  "The rules regarding definiteness of essential terms in a contract are based on the concept that a party cannot accept an offer to form a contract unless the terms of that contract are reasonably certain."  *Id.*

In certain situations, a court may uphold an agreement by supplying missing terms.  *Id.*  "To that end, Texas courts prefer to validate transactions rather than void them; but, courts may not create a contract where none exists and they generally may not interpolate or eliminate essential terms."  *Id.*  "Contract terms are reasonably certain 'if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.'"  *Id.* at *2 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 33(2) (1981)).  "This conforms to the policy that parties, and not the courts, should make contracts."  *Id.*  "Where the parties intended to make an agreement and there is a certain basis for granting a remedy, courts should find the contract terms definite enough to provide a remedy."  *Id.*  "Uncertainty of terms can, however, preclude one remedy without affecting others."  *Id.*  "For example, less certainty is necessary in a suit for damages than one for specific performance."  *Id.*  Some courts have determined that, where the essence of the parties' agreement is the sale of real estate, terms of pricing may not be essential elements to the agreement.  *See Thedford Crossing, L.P.*, 306 S.W.3d at 868.

We explain below that legally and factually sufficient evidence supported the jury's finding to Question 1, which found that there was a meeting of the minds with respect to the sale of real estate.  Although the property description in the oral contract did not satisfy the statute of frauds, we hold that the partial performance exception saved the oral contract from the statute of frauds.  Due to our finding, we need not discuss whether more specific pricing terms were required to meet the statute of frauds in this case.

**C.    Analysis**

Since Thomas met his initial burden to demonstrate that the statute of frauds applies, the burden shifted to the Millers to establish an exception that would remove the oral contract out of the statute of frauds. *Heritage Constructors, Inc. v. Chrietzberg Elec., Inc.*, No. 06-14-00048-CV, 2015 WL 3378377, at *6 (Tex. App.—Texarkana Mar. 4, 2015, no pet.) (mem. op.).  The Millers argue that the partial performance exception applies and, therefore, that the evidence was legally and factually sufficient to support the jury's verdict.

"Partial performance is an exception to the statute of frauds." *Bookout*, 165 S.W.3d at 907 (citing *Exxon Corp. v. Breezevale, Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pets. denied)).  The "[partial performance] exception is enforced only when 'denial of enforcement would amount to a virtual fraud in the sense that the party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy, and the other party, if permitted to plead the statute, would reap an unearned benefit.'" *Heritage Constructors, Inc.*, 2015 WL 3378377, at *6 (quoting *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40 (Tex. App.—Dallas 1985, no writ)); *see Hairston v. S. Methodist Univ.*, 441 S.W.3d 327, 336 (Tex. App.—Dallas 2013, pet. denied).

In order to establish the partial performance exception, the Millers had to show that (1) *they* had performed acts unequivocally referable to the agreement (2) that the acts were performed in reliance on the agreement (3) that as a result of the acts they had experienced substantial detriment (4) that they have no adequate remedy for their loss and (5) that Thomas would reap an unearned benefit such that not enforcing the agreement would amount to a virtual fraud. *Heritage*

12

*Constructors, Inc.*, 2015 WL 3378377, at *6. "Generally, the party claiming an exception to the statute of frauds must secure a finding to that effect." *Bookout*, 165 S.W.3d at 908 (citing *Barbouti v. Munden*, 866 S.W.2d 288, 295 (Tex. App.—Houston [14th Dist.] 1993, writ denied), *disapproved of on other grounds by Formosa Plastics Corp.*, 960 S.W.2d 41, 46 (Tex. 1997)). In line with the Texas Supreme Court's guidance in *National Property Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 427 (Tex. 2015), the Millers secured findings that they paid consideration pursuant to the oral contract, took possession of the property, and made valuable and permanent improvements upon the land with Thomas' consent.

"The partial performance must be 'unequivocally referable to the agreement and corroborative of the fact that a contract actually was made.'" *Bookout*, 165 S.W.3d at 907 (quoting *Exxon Corp.*, 82 S.W.3d at 439). In order to determine whether the Millers met the partial performance exception, we must first determine whether the evidence was legally and factually sufficient to support the jury's finding that Thomas agreed to deed two acres of land including a house and two water wells.

The jury heard Bobby and Thyra testify that Thomas agreed to give them the property when they paid off the mortgage. The property description was provided by extrinsic evidence. The Millers introduced Cass County tax records that included the property address, "Geographic ID," and "Property ID" and listed the legal description as "D DYER ABST 256 TR 65 A-I." The Millers testified that, in reliance on Thomas' statements, they paid property taxes on this two-acre piece of property. While the mortgage balance and set terms of payment would have been "valuable additions to their agreement given the benefit of hindsight, the absence of such terms

13

does not serve to" vitiate the oral agreement for the contract for sale where partial performance was established. *See Thedford Crossing, L.P.*, 306 S.W.3d at 869. Moreover, Thyra testified that Thomas said he paid $10,000.00 for the property, which he would transfer to Bobby after he paid $10,000.00. The evidence also established that the Millers made monthly payments of $113.76 to the Bank on the property. In light of this evidence, we find that legally and factually sufficient evidence supported the jury's finding that Thomas agreed to deed two acres of land, including a house and two water wells, when the Millers paid off the mortgage.

Our ruling that the jury's answer to Question 1 was supported by legally and factually sufficient evidence means that there was an agreement. We next address whether the agreement is enforceable. The oral sale of real estate is not enforceable under the statute of frauds unless the partial performance exception is met. *See Jenkins*, 2007 WL 2682110, at \*4; *Elizondo*, 957 S.W.2d at 864. Thus, we address whether the Millers met the partial performance exception.

"Actions relied on to establish the partial performance exception to the statute of frauds must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced; otherwise, they do not tend to prove the existence of the parol agreement relied on by the plaintiff." *Bookout*, 165 S.W.3d at 907–08. "A party cannot rely upon oral representations to satisfy the partial performance exception, however." *Nat'l Prop. Holdings*, 453 S.W.3d at 427. "Rather, the kind of performance that justifies the exception to the statute of frauds is 'performance which alone and *without the aid of words of promise* is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing.'" *Id.* (quoting *Chevalier*

14

*v. Lane's, Inc.*, 213 S.W.2d 530, 533 (Tex. 1948)).[8] "If the evidence establishes that the party who performed the act that is alleged to be partial performance could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable." *Id.*

Here, Thomas' deemed admissions established that the Millers made payments on a mortgage on his behalf "between 2004 and 2010," that the Millers "occupied the property from 2004 to 2009," that Thomas "did not reside in the property during 2004 to 2010," and that the Millers made repairs and improvements to the structures on the property between 2004 and 2010. The Millers introduced receipts from contractors and invoices showing the types of repairs and the cost of repairs made to the property. Photographs of the house before and after the renovations demonstrated the extensive and costly nature of the renovations.

Thomas does not contest that the Millers made mortgage payments on his behalf, that the Millers possessed the property, or that they made valuable improvements to the property. Rather, he argues, based on the letters written by Mays, that the payments made by the Millers were rent payments. However, the jury rejected the argument that the Millers' payments were merely rental payments. In light of the evidence presented at trial, we hold that the jury's finding that the Millers met the partial performance exception to the statute of frauds was supported by legally and factually sufficient evidence.

---

[8]"The statute of frauds 'unmistakably declares a policy that parol testimony is too unreliable for proof of certain types of agreement, and courts must give heed to that policy as well as to considerations of an equitable character.'" *Id.* (quoting *Chevalier*, 213 S.W.2d at 533).

15

**IV.    Lack of Evidence to Support Finding that Thyra Was a Party to the Oral Agreement**

The evidence at trial established that Thyra was not married to Bobby at the time of the oral agreement. Accordingly, Thomas argues that judgment in Thyra's favor was improper. The Millers concede this point. Accordingly, we modify the trial court's judgment to delete Thyra's name as a judgment creditor.

**V.    The Millers' Failure to File a Separate Notice of Appeal**

Even though their amended complaint omitted unjust enrichment, which was included in their original petition, the Millers argue that the trial court erred in refusing to submit proposed instructions for unjust enrichment. They also argue that the trial court erred in reducing the jury's award of attorney fees.

Under Rule 25.1 of the Texas Rules of Appellate Procedure, any "party who seeks to alter the trial court's judgment . . . must file a notice of appeal." TEX. R. APP. P. 25.1(c). "[A]n appellee who has not filed a notice of appeal may not seek to alter the trial court's judgment to award the appellee more relief than the trial court granted the appellee." *Frontier Logistics, L.P. v. Nat'l Prop. Holdings, L.P.*, 417 S.W.3d 656, 666 (Tex. App.—Houston [14th Dist.] 2013, pets. denied) (citing *Lubbock Cty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 584 (Tex. 2002)); *see Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 171 (Tex. 2004).

Because they seek to alter the trial court's judgment and request greater relief than awarded, the Millers were required to file a separate notice of appeal in order for us to address these matters. Since they did not file a separate notice of appeal, we overrule their points of error.

16

**VI.      Conclusion**

We find that the jury's answers to Question 1 and Question 2 were supported by legally and factually sufficient evidence.  However, we conclude that Thyra was not a party to the oral agreement.  Accordingly, we modify the trial court's judgment to delete Thyra's name as judgment creditor and affirm the judgment, as modified.

Jack Carter
Justice

Date Submitted:      May 6, 2016
Date Decided:        August 4, 2016

17